IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

IN THE MATTER OF
THE EXTRADITION OF                                    25-MJ- *1302*
AHMAD TAYSEER DAGAMSEH

_____

I, the undersigned Assistant United States Attorney, being duly sworn, state on

information and belief that the following is true and correct:

1.      In this matter, I represent the United States in fulfilling its treaty obligation to

Canada.

2.      There is an extradition treaty in force between the United States and Canada

(the "Treaty").[1]

3.      Pursuant to the Treaty, Canada has submitted a formal request through

diplomatic channels for the extradition of AHMAD TAYSEER DAGAMSEH

("DAGAMSEH" or the "fugitive").

4.      According to the information the Government of Canada has provided,

DAGAMSEH is charged with one count of sexual assault, in violation of section 271 of the

Criminal Code of Canada.

_____

[1] *See* Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, *as amended by* Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990); *and* Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002) (collectively, the "Treaty").

5.     This offense was committed within the jurisdiction of Canada.   On December 24, 2023, Constable Brenard Scheid swore an Information before the Ontario Court of Justice in London, Ontario charging DAGAMSEH with the aforementioned offense.   The same court issued a bench warrant for the arrest of DAGAMSEH on April 15, 2024, after he failed to appear for a scheduled court date.

6.     Canada presents the following facts as basis for the charge and the extradition request:

   a. According to DAGAMSEH's former girlfriend (the "victim"):

      i. On November 20, 2023, DAGAMSEH sexually assaulted the victim on the stairs of the parking lot of the White Oaks Mall, where she worked as a clothing store cashier.   Sometime in October 2023, one month before the assault, she met DAGAMSEH, a Jordanian citizen living in Canada, at the mall.   They began a courtship and communicated via Snapchat.   They met in person approximately ten times, and the victim's family was present on each occasion.

      ii. During their courtship, DAGAMSEH frequently commented to the victim that marriage would enable him to obtain Canadian citizenship.   The victim's grandmother, who resides in Jordan, warned her that DAGAMSEH had a criminal record in Jordan.   The victim became concerned that DAGAMSEH only wanted to marry her for her citizenship and decided to end the relationship after one month.

      ii. On November 20, 2023, DAGAMSEH met the victim outside the mall

where she worked, and they went for a walk.    They sat on the top landing of the last level of stairs in the mall parking garage and had a conversation, during which DAGAMSEH begged the victim to marry him.    He leaned over and kissed her on the lips, but the victim pushed him away and told him no.    The victim looked at her phone and told DAGAMSEH that she had to get back to work.    DAGAMSEH took her phone and aggressively kissed her on the lips again.    When she repeated that she had to get back to work, DAGAMSEH pushed her backwards against the stairs and positioned himself on top of her.    The victim repeatedly told him to get off her and to stop touching her.    The victim felt DAGAMSEH rubbing his erect penis over her clothed vaginal area.    She began to cry and scream. DAGAMSEH placed his hand over her mouth and told her to be quiet. She tried to push DAGAMSEH away.    She put her hand against his throat and hit him.    DAGAMSEH became more aggressive and hit her back. The victim eventually managed to wiggle herself away from DAGAMSEH. She picked up her phone and began running away.    DAGAMSEH followed her, apologizing and asking for her forgiveness.

iv. The victim returned to work and told her mother, who worked at the same store, that DAGAMSEH had just sexually assaulted her.    The victim's mother immediately contacted the police.

b. On December 21, 2023, Canadian police arrested DAGAMSEH in London, Ontario.    On December 24, 2023, he was charged with one count of sexual assault.    On January 15, 2024, DAGAMSEH was released on an undertaking.

3

He made several court appearances between January and March 2024. On April 15, 2024, DAGAMSEH failed to appear for a scheduled court date, and a bench warrant issued for his arrest.

7.    Article II of the Treaty covers the aforementioned offense.

8.    The conduct underlying the crime for which DAGAMSEH is wanted for prosecution in Canada constitutes a felony under both U.S. federal law, in violation of 18 U.S.C. § 2244, abusive sexual contact, referring back to § 2242(1), for which the maximum penalty is twenty (20) years imprisonment, and New York State (NYS) law, in violation of NYS Penal Law Section 130.65, sexual abuse in the first degree (Article 130 of NYS Penal Law defines sexual assault as non-consensual sexual contact), for which the maximum term of imprisonment is seven (7) years.

9.    DAGAMSEH is currently in the custody of U.S. Immigration and Customs Enforcement (ICE), at the Buffalo Federal Detention Facility, 4250 Federal Drive, in Batavia, New York, which is in the Western District of New York.

10.    Tom Heinemann, an attorney in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a copy of the Treaty and a declaration authenticating a copy of the diplomatic note by which Canada requested extradition. The declaration states that the Treaty covers the offense for which Canada seeks extradition and confirms that the documents supporting the request for extradition are

properly certified by the principal U.S. diplomatic officer in Canada, in accordance with 18 U.S.C. § 3190, so as to enable them to be received into evidence.

11.    The declaration from the U.S. Department of State with its attachments, including copies of the diplomatic note from Canada, the Treaty, and the certified documents Canada submitted in support of the request (marked collectively as **Government's Exhibit A**) are filed with this complaint and incorporated by reference herein.

WHEREFORE, the undersigned requests that a warrant for the fugitive's arrest issue in accordance with 18 U.S.C. § 3184 and the Treaty.

FAUZIA K. MATTINGLY
Assistant United States Attorney

Sworn to before me this
10TH day of June, 2025

HONORABLE JEREMIAH J. McCARTHY
United States Magistrate Judge

Exhibit A

DAGAMSEH - EXT -000001

## DECLARATION OF TOM HEINEMANN

I, Tom Heinemann, hereby declare and say as follows:

1. I am an Attorney-Adviser in the Office of the Legal Adviser, Department of State, Washington, D.C. This office has responsibility for extradition requests with the Department of State, and I am charged with the extradition case of Ahmad Tayseer Dagamseh. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. The relevant and applicable treaty provisions in full force and effect between the United States and Canada are found in the Extradition Treaty between the United States of America and Canada of December 3, 1971, which entered into force on March 22, 1976 (the "1971 Treaty"), the Protocol Amending the Treaty on Extradition between the United States of America and Canada of January 11, 1988, which entered into force on November 26, 1991 (the "1988 Protocol"), and the Second Protocol Amending the Treaty on Extradition between the Government of the United States of America and the Government of Canada of January 12, 2001, which entered into force on April 30, 2003 (the "2001 Protocol"). Copies of the Treaty and Protocols are attached to this declaration.

3. In accordance with the provisions of the Treaty and Protocols, the Embassy of Canada has submitted Diplomatic Note No. 12591, dated January 10, 2025, formally requesting the extradition of Ahmad Tayseer Dagamseh. A copy of the Diplomatic Note is attached to this declaration.

4. In accordance with Article 17 of the 1971 Treaty, the Government of the United States provides legal representation in its courts for Canada in its extradition requests, and Canada provides legal representation in its courts for extradition requests made by the United States.

5. The offences for which extradition is sought are extraditable offenses pursuant to Article 2 of the 1971 Treaty, as replaced by Article I of the 1988 Protocol.

DAGAMSEH - EXT -000002

6. The documents submitted by the Government of Canada in support of its extradition request were certified on January 8, 2025, by David L. Cohen, Ambassador of the United States of America in Ottawa, in accordance with Title 18, United States Code, Section 3190. Mr. Cohen, at the time of his certification, was the principal diplomatic officer of the United States in Canada.

      I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Santa Fe, New Mexico on April 8th, 2025.

Tom Heinemann

Attorney Adviser

Law Enforcement and Intelligence

Attachments:

1. Copy of the Note
2. Copy of the Treaty and Protocols

DAGAMSEH - EXT -000003



Embassy of Canada          Ambassade du Canada

Note No. 12591

> The Embassy of Canada presents its compliments to the Department of State and has the honour to request the extradition of Ahmad Tayseer Dagamseh, a Jordanian citizen, born on ▮▮▮▮▮▮▮▮

> Photographs of the person sought are appended to the documents submitted in support of the extradition request.

> Canada is seeking the extradition of Ahmad Tayseer Dagamseh to stand trial in relation to:

- One count of Sexual Assault, contrary to section 271 of the *Criminal Code;*

> Information #998-23-23108816 was sworn by Officer Bernard Scheid on December 24, 2023, before Justice of the Peace Kristine Diaz in the Province of Ontario. Warrant for Arrest dated April 15, 2024, was issued by Justice of the Peace T. Oudekerk in the Province of Ontario.

> There is no statute of limitations in respect of the offence for which the person sought stands charged. The indictable offence is punishable by more than one-year imprisonment.

> Ahmad Tayseer Dagamseh is presently held in custody at 4250 Federal Drive, Buffalo Federal Detention facility in Batavia, New York, USA.

> The Prosecuting Attorney is Amanda Rubaszek, Crown Counsel, International Assistance, Ministry of the Attorney General for the Province of Ontario, telephone 416-315-2497.

.../2



DAGAMSEH - EXT -000004

-2-

The Police Contact is Constable Ardiana Berisha, London Police Services, Ontario, email ABerisha@londonpolice.ca.

The Embassy of Canada avails itself of this opportunity to renew to the Department of State the assurances of its highest consideration.

WASHINGTON, D.C.

January 10, 2025

DAGAMSEH - EXT -000005

## TREATIES AND OTHER INTERNATIONAL ACTS SERIES 8237

# EXTRADITION

Treaty Between the
UNITED STATES OF AMERICA
and CANADA

Signed at Washington December 3, 1971

*and*

Agreement Amending the Treaty
Effected by Exchange of Notes
Signed at Washington June 28 and July 9, 1974



DAGAMSEH - EXT -000006

# CANADA

## Extradition

*Treaty signed at Washington December 3, 1971;*
*And agreement amending the treaty*
*Effected by exchange of notes*
*Signed at Washington June 28 and July 9, 1974;*
*Ratification of the treaty, as amended, advised by the Senate of*
*the United States of America December 1, 1975;*
*Ratified by the President of the United States of America De-*
*cember 12, 1975;*
*Ratified by Canada February 2, 1976;*
*Ratifications exchanged at Ottawa March 22, 1976;*
*Proclaimed by the President of the United States of America*
*May 6, 1976;*
*Entered into force March 22, 1976.*

---

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

## A PROCLAMATION

CONSIDERING THAT:

The Treaty on Extradition between the United States of America and Canada was signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974, the original of which Treaty, as amended, is hereto annexed;

The Senate of the United States of America by its resolution of December 1, 1975, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty, as amended;

The Treaty was ratified by the President of the United States of America on December 12, 1975, in pursuance of the advice and consent of the Senate, and has been duly ratified on the part of Canada;

The respective instruments of ratification were exchanged at Ottawa on March 22, 1976;

It is provided in Article 18 of the Treaty that the Treaty shall enter into force upon the exchange of ratifications;

NOW, THEREFORE, I, Gerald R. Ford, President of the United States of America, proclaim and make public the Treaty, as amended,

SBU -LAW ENFORCEMENT

DAGAMSEH - EXT -000007

2

to the end that it shall be observed and fulfilled with good faith on and after March 22, 1976, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this sixth day of May in the year of our Lord one thousand nine hundred seventy-six [SEAL] and of the Independence of the United States of America the two hundredth.

GERALD R. FORD

By the President:
JOSEPH JOHN SISCO
*Acting Secretary of State*

SBU -LAW ENFORCEMENT

DAGAMSEH - EXT -000008

3

TREATY ON EXTRADITION BETWEEN
THE UNITED STATES OF AMERICA
AND CANADA

The United States of America and Canada, desiring to make
more effective the cooperation of the two countries in the
repression of crime by making provision for the reciprocal
extradition of offenders, agree as follows:

TIAS 8237

SBU -LAW ENFORCEMENT

DAGAMSEH - EXT -000009

4

ARTICLE 1

Each Contracting Party agrees to extradite to the other, in
the circumstances and subject to the conditions described in this
Treaty, persons found in its territory who have been charged with,
or convicted of, any of the offenses covered by Article 2 of this
Treaty committed within the territory of the other, or outside
thereof under the conditions specified in Article 3(3) of this
Treaty.

ARTICLE 2

(1)  Persons shall be delivered up according to the provisions
of this Treaty for any of the offenses listed in the Schedule
annexed to this Treaty, which is an integral part of this Treaty,
provided these offenses are punishable by the laws of both
Contracting Parties by a term of imprisonment exceeding one year.

(2)  Extradition shall also be granted for attempts to
commit, or conspiracy to commit or being a party to any of the
offenses listed in the annexed Schedule.

(3)  Extradition shall also be granted for any offense against
a federal law of the United States in which one of the offenses
listed in the annexed Schedule, or made extraditable by paragraph (2)
of this Article, is a substantial element, even if transporting,
transportation, the use of the mails or interstate facilities are
also elements of the specific offense.

ARTICLE 3

(1)  For the purpose of this Treaty the territory of a
Contracting Party shall include all territory under the
jurisdiction of that Contracting Party, including air space

TIAS 8237

DAGAMSEH - EXT -000010

5

and territorial waters and vessels and aircraft registered in
that Contracting Party or aircraft leased without crew to a lessee
who has his principal place of business, or, if the lessee has
no such place of business, his permanent residence in, that
Contracting Party if any such aircraft is in flight, or if any
such vessel is on the high seas when the offense is committed.
For the purposes of this Treaty an aircraft shall be considered
in flight from the moment when power is applied for the purpose
of the take-off until the moment when the landing run ends.

(2)  In a case when offense 23 of the annexed Schedule is
committed on board an aircraft at any time from the moment when
all its external doors are closed following embarkation until
the moment when any such door is opened for disembarkation, such
offense and any other offense covered by Article 2 committed
against passengers or crew of that aircraft in connection with
such offense shall be considered to have been committed within
the territory of a Contracting Party if the aircraft was
registered in that Contracting Party, if the aircraft landed in
the territory of that Contracting Party with the alleged offender
still on board, or if the aircraft was leased without crew to a
lessee who has his principal place of business, or, if the lessee
has no such place of business, his permanent residence in that
Contracting Party.

(3)  When the offense for which extradition has been requested
has been committed outside the territory of the requesting State,
the executive or other appropriate authority of the requested
State shall have the power to grant the extradition if the laws
of the requested State provide for jurisdiction over such an
offense committed in similar circumstances.

TIAS 8237

DAGAMSEH - EXT -000011

6

## ARTICLE 4

(1)  Extradition shall not be granted in any of the following circumstances:

(i)  When the person whose surrender is sought is being proceeded against, or has been tried and discharged or punished in the territory of the requested State for the offense for which his extradition is requested.

(ii) When the prosecution for the offense has become barred by lapse of time according to the laws of the requesting State.

(iii) When the offense in respect of which extradition is requested is of a political character, or the person whose extradition is requested proves that the extradition request has been made for the purpose of trying or punishing him for an offense of the above-mentioned character.  If any question arises as to whether a case comes within the provisions of this subparagraph, the authorities of the Government on which the requisition is made shall decide.

(2)  The provisions of subparagraph (iii) of paragraph (1) of this Article shall not be applicable to the following:

(i)  A kidnapping, murder or other assault against the life or physical integrity of a person to whom a Contracting Party has the duty according to international law to give special protection, or any attempt to commit such an offense with respect to any such person.

(ii) When offense 23 of the annexed Schedule, or an attempt to commit, or a conspiracy to commit, or being a party to the commission of that offense, has been committed  on board an aircraft engaged in commercial services carrying passengers.

TIAS 8237

DAGAMSEH - EXT -000012

7

### ARTICLE 5

If a request for extradition is made under this Treaty for a person who at the time of such request, or at the time of the commission of the offense for which extradition is sought, is under the age of eighteen years and is considered by the requested State to be one of its residents, the requested State, upon a determination that extradition would disrupt the social readjustment and rehabilitation of that person, may recommend to the requesting State that the request for extradition be withdrawn, specifying the reasons therefor.

### ARTICLE 6

When the offense for which extradition is requested is punishable by death under the laws of the requesting State and the laws of the requested State do not permit such punishment for that offense, extradition may be refused unless the requesting State provides such assurances as the requested State considers sufficient that the death penalty shall not be imposed, or, if imposed, shall not be executed.

### ARTICLE 7

When the person whose extradition is requested is being proceeded against or is serving a sentence in the territory of the requested State for an offense other than that for which extradition has been requested, his surrender may be deferred until the conclusion of the proceedings and the full execution of any punishment he may be or may have been awarded.

TIAS 8237

SBU -LAW ENFORCEMENT

DAGAMSEH - EXT -000013

8

## ARTICLE 8

The determination that extradition should or should not be granted shall be made in accordance with the law of the requested State and the person whose extradition is sought shall have the right to use all remedies and recourses provided by such law.

## ARTICLE 9

(1)  The request for extradition shall be made through the diplomatic channel.

(2)  The request shall be accompanied by a description of the person sought, a statement of the facts of the case, the text of the laws of the requesting State describing the offense and prescribing the punishment for the offense, and a statement of the law relating to the limitation of the legal proceedings.

(3)  When the request relates to a person who has not yet been convicted, it must also be accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting State and by such evidence as, according to the laws of the requested State, would justify his arrest and committal for trial if the offense had been committed there, including evidence proving the person requested is the person to whom the warrant of arrest refers.

(4)  When the request relates to a person already convicted, it must be accompanied by the judgment of conviction and sentence passed against him in the territory of the requesting State, by a statement showing how much of the sentence has not been served, and by evidence proving that the person requested is the person to whom the sentence refers.

TIAS 8237

SBU -LAW ENFORCEMENT

DAGAMSEH - EXT -000014

9

ARTICLE 10

(1)  Extradition shall be granted only if the evidence be
found sufficient, according to the laws of the place where the
person sought shall be found, either to justify his committal
for trial if the offense of which he is accused had been committed
in its territory or to prove that he is the identical person
convicted by the courts of the requesting State.

(2)  The documentary evidence in support of a request for
extradition or copies of these documents shall be admitted in
evidence in the examination of the request for extradition when,
in the case of a request emanating from Canada, they are
authenticated by an officer of the Department of Justice of
Canada and are certified by the principal diplomatic or consular
officer of the United States in Canada, or when, in the case of
a request emanating from the United States, they are authenticated
by an officer of the Department of State of the United States and
are certified by the principal diplomatic or consular officer of
Canada in the United States.

ARTICLE 11

(1)  In case of urgency a Contracting Party may apply for
the provisional arrest of the person sought pending the presentation
of the request for extradition through the diplomatic channel.
Such application shall contain a description of the person sought,
an indication of intention to request the extradition of the person
sought and a statement of the existence of a warrant of arrest
or a judgment of conviction against that person, and such further
information, if any, as would be necessary to justify the issue of
a warrant of arrest had the offense been committed, or the person
sought been convicted, in the territory of the requested State.

TIAS 8237

SBU -LAW ENFORCEMENT

DAGAMSEH - EXT -000015

10

(2)  On receipt of such an application the requested State shall take the necessary steps to secure the arrest of the person claimed.

(3)  A person arrested shall be set at liberty upon the expiration of forty-five days from the date of his arrest pursuant to such application if a request for his extradition accompanied by the documents specified in Article 9 shall not have been received.  This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request is subsequently received.

ARTICLE 12

(1)  A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted nor be extradited by that State to a third State unless:

(i)  He has left the territory of the requesting State after his extradition and has voluntarily returned to it;

(ii) He has not left the territory of the requesting State within thirty days after being free to do so; or

(iii) The requested State has consented to his detention, trial, punishment for an offense other than that for which extradition was granted or to his extradition to a third State, provided such other offense is covered by Article 2.

(2)  The foregoing shall not apply to offenses committed after the extradition.

TIAS 8237

DAGAMSEH - EXT -000016

11

### ARTICLE 13

(1)  A requested State upon receiving two or more requests for the extradition of the same person either for the same offense, or for different offenses, shall determine to which of the requesting States it will extradite the person sought.

(2)  Among the matters which the requested State may take into consideration are the possibility of a later extradition between the requesting States, the seriousness of each offense, the place where the offense was committed, the dates upon which the requests were received and the provisions of any extradition agreements between the requested State and the other requesting State or States.

### ARTICLE 14

(1)  The requested State shall promptly communicate to the requesting State through the diplomatic channel the decision on the request for extradition.

(2)  If a warrant or order for the extradition of a person sought has been issued by the competent authority and he is not removed from the territory of the requested State within such time as may be prescribed by the laws of that State, he may be set at liberty and the requested State may subsequently refuse to extradite that person for the same offense.

### ARTICLE 15

(1)  To the extent permitted under the law of the requested State and subject to the rights of third parties, which shall be duly respected, all articles acquired as a result of the offense or which may be required as evidence shall, if found, be surrendered to the requesting State if extradition is granted.

**TIAS 8237**

SBU -LAW ENFORCEMENT

DAGAMSEH - EXT -000017

12

(2)  Subject to the qualifications of paragraph (1) of this Article, the above-mentioned articles shall be returned to the requesting State even if the extradition, having been agreed to, cannot be carried out owing to the death or escape of the person sought.


ARTICLE 16

(1)  The right to transport through the territory of one of the Contracting Parties a person surrendered to the other Contracting Party by a third State shall be granted on request made through the diplomatic channel, provided that conditions are present which would warrant extradition of such person by the State of transit and reasons of public order are not opposed to the transit.

(2)  The Party to which the person has been extradited shall reimburse the Party through whose territory such person is transported for any expenses incurred by the latter in connection with such transportation.


ARTICLE 17

(1)  Expenses related to the transportation of the person sought to the requesting State shall be paid by the requesting State.  The appropriate legal officers of the State in which the extradition proceedings take place shall, by all legal means within their power, assist the requesting State before the respective judges and magistrates.


TIAS 8237

SBU -LAW ENFORCEMENT

DAGAMSEH - EXT -000018

13

(2)  No pecuniary claim, arising out of the arrest, detention, examination and surrender of persons sought under the terms of this Treaty, shall be made by the requested State against the requesting State.

ARTICLE 18

(1)  This Treaty shall be ratified and the instruments of ratification shall be exchanged at Ottawa as soon as possible.

(2)  This Treaty shall terminate and replace any extradition agreements and provisions on extradition in any other agreement in force between the United States and Canada; except that the crimes listed in such agreements and committed prior to entry into force of this Treaty shall be subject to extradition pursuant to the provisions of such agreements.

(3)  This Treaty shall enter into force upon the exchange of ratifications.[1] It may be terminated by either Contracting Party giving notice of termination to the other Contracting Party at any time and the termination shall be effective six months after the date of receipt of such notice.

[1] Mar. 22, 1976.

TIAS 8237

DAGAMSEH - EXT -000019

14

IN WITNESS WHEREOF the undersigned, being duly authorized
thereto by their respective Governments, have signed this
Treaty.

DONE in duplicate, in the English and French languages,
each language version being equally authentic, at Washington
this third day of December, one thousand nine hundred seventy
one.

FOR THE UNITED STATES OF AMERICA:

_William P. Rogers_ [1]

FOR CANADA:

_Mitchell Sharp_ [2]

_____
[1] William P. Rogers
[2] Mitchell Sharp

TIAS 8237

DAGAMSEH - EXT -000020

15

SCHEDULE

1. Murder; assault with intent to commit murder.

2. Manslaughter.

3. Wounding; maiming; or assault occasioning bodily harm.

4. Unlawful throwing or application of any corrosive substances at or upon the person of another.

5. Rape; indecent assault.

6. Unlawful sexual acts with or upon children under the age specified by the laws of both the requesting and requested States.

7. Willful nonsupport or willful abandonment of a minor when such minor is or is likely to be injured or his life is or is likely to be endangered.

8. Kidnapping; child stealing; abduction; false imprisonment.

9. Robbery; assault with intent to steal.

10. Burglary; housebreaking.

11. Larceny, theft or embezzlement.

12. Obtaining property, money or valuable securities by false pretenses or by threat of force or by defrauding the public or any person by deceit or falsehood or other fraudulent means, whether such deceit or falsehood or any fraudulent means would or would not amount to a false pretense.

13. Bribery, including soliciting, offering and accepting.

14. Extortion.

TIAS 8237

78-798 O—76

SBU -LAW ENFORCEMENT

DAGAMSEH - EXT -000021

16

15. Receiving any money, valuable securities or other property
    knowing the same to have been unlawfully obtained.

16. Fraud by a banker, agent, or by a director or officer of
    any company.

17. Offenses against the laws relating to counterfeiting or
    forgery.

18. Perjury in any proceeding whatsoever.

19. Making a false affidavit or statutory declaration for any
    extrajudicial purpose.

20. Arson.

21. Any act done with intent to endanger the safety of any
    person travelling upon a railway, or in any aircraft or
    vessel or other means of transportation.

22. Piracy, by statute or by law of nations; mutiny or revolt
    on board a vessel against the authority of the captain or
    commander of such vessel.

23. Any unlawful seizure or exercise of control of an aircraft,
    by force or violence or threat of force or violence, or by
    any other form of intimidation, on board such aircraft.

24. Willful injury to property.

25. Offenses against the bankruptcy laws.

26. Offenses against the laws relating to the traffic in,
    production, manufacture, or importation of narcotic drugs,
    Cannabis sativa L., hallucinogenic drugs, amphetamines,
    barbiturates, cocaine and its derivatives.

TIAS 8237

DAGAMSEH - EXT -000022

17

27. Use of the mails or other means of communication in
    connection with schemes devised or intended to deceive
    or defraud the public or for the purpose of obtaining
    money or property by false pretenses.

28. Offenses against federal laws relating to the sale or
    purchase of securities.

29. Making or having in possession any explosive substance
    with intent to endanger life, or to cause severe damage
    to property.

30. Obstructing the course of justice in a judicial
    proceeding, existing or proposed, by:

    a)  dissuading or attempting to dissuade a person by
        threats, bribes, or other corrupt means from
        giving evidence;

    b)  influencing or attempting to influence by threat,
        bribes, or other corrupt means a person in his
        conduct as a juror; or

    c)  accepting a bribe or other corrupt consideration
        to abstain from giving evidence or to do or to
        refrain from doing anything as a juror.

TIAS 8237

SBU -LAW ENFORCEMENT

DAGAMSEH - EXT -000023

35

[AMENDING AGREEMENT]

*The Canadian Ambassador to the Secretary of State*



Canadian Embassy                                    Ambassade du Canada

Washington, D.C.

June 28, 1974

No. 126

Excellency,

I have the honour to refer to the Treaty on Extra-
dition between the Government of Canada and the Government
of the United States signed at Washington on December 3,
1971 and to subsequent discussions between representatives
of our two governments concerning the amendment of the said
Treaty.

Further to those discussions I now have the honour
to propose that the said Treaty be amended as follows:

(1) That Article 4(2)(i) of the Treaty shall
be amended to read:  "A kidnapping, murder,
or other assault against the life or physical
integrity of a person to whom a Contracting
Party has the duty according to international
law to give special protection, or any attempt
or conspiracy to commit, or being a party to

The Honourable
  Henry A. Kissinger,
    Secretary of State,
      Washington, D.C.
        20520

TIAS 8237

DAGAMSEH - EXT -000024

36

the commission of, such an offence with
respect to any such person."

(2) That clause 26 of the Schedule annexed to
the Treaty shall be amended to read:
"Offences against the laws relating to
the traffic in, production, manufacture or
importation of drugs listed in Schedule I
to the Single Convention on Narcotic Drugs
of March 30, 1961 [1] and of drugs listed in
Schedules I, II and III to the Convention
on Psychotropic Substances of February 21,
1971."

If this proposal meets with the approval of your
government, I have the further honour to propose that
this Note, which is authentic in English and in French,
and your reply shall constitute an amendment to the Treaty
on Extradition between Canada and the United States referred
to above, which shall come into force on the date of the
entry into force of the said Treaty and which shall be con-
sidered an integral part of the said Treaty.

Accept, Excellency, the assurances of my highest
consideration.

M. Cadieux,
Ambassador.

---

[1] TIAS 6298; 18 UST 1559.

TIAS 8237

DAGAMSEH - EXT -000025

39

*The Secretary of State to the Canadian Ambassador*

DEPARTMENT OF STATE
WASHINGTON

July 9, 1974

Excellency:

I have the honor to refer to your note of June 28, 1974, in the English and French languages, relating to amendment of the Treaty on Extradition between the United States of America and Canada, signed at Washington December 3, 1971.

On behalf of the United States of America I confirm the understanding set forth therein and consider that your note and this reply constitute an agreement between the United States and Canada on this matter.

Accept, Excellency, the renewed assurances of my highest consideration.

For the Secretary of State:

Acting Secretary

*Joseph John Sisco*

His Excellency
    Marcel Cadieux,
        Ambassador of Canada.

TIAS 8237
U.S. GOVERNMENT PRINTING OFFICE:1976 O—73-798

SBU -LAW ENFORCEMENT

DAGAMSEH - EXT -000026

| 101st Congress 2d Session | SENATE | Treaty Doc. 101–17 |
| --- | --- | --- |

# PROTOCOL AMENDING THE EXTRADITION TREATY WITH CANADA

---

## MESSAGE

#### FROM

# THE PRESIDENT OF THE UNITED STATES

##### TRANSMITTING

THE PROTOCOL SIGNED AT OTTAWA ON JANUARY 11, 1988, AMENDING THE TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA AND CANADA, SIGNED AT WASHINGTON ON DECEMBER 3, 1971, AS AMENDED BY AN EXCHANGE OF NOTES ON JUNE 28 AND JULY 9, 1974



APRIL 24, 1990.—Protocol was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

---

U.S. GOVERNMENT PRINTING OFFICE

39–118                          WASHINGTON : 1990

DAGAMSEH - EXT -000027

# LETTER OF TRANSMITTAL

THE WHITE HOUSE, *April 24, 1990.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Protocol signed at Ottawa on January 11, 1988, amending the Treaty on Extradition Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974. I transmit also, for the information of the Senate, the report of the Department of State with respect to the protocol.

The protocol amends the Extradition Treaty Between the United States and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974. It represents an important step in improving law enforcement cooperation and combatting terrorism by excluding from the scope of the political offense exception serious offenses typically committed by terrorists; e.g., murder, manslaughter, kidnapping, use of an explosive device capable of endangering life or causing grievous bodily harm, and attempt or conspiracy to commit the foregoing offenses.

The protocol also will help to improve implementation of the current extradition treaty in several other respects. Most significant, the protocol substitutes a dual criminality clause for the current list of extraditable offenses, so that, *inter alia,* parental child abduction and certain additional narcotics offenses will be covered by the new treaty.

I recommend that the Senate give early and favorable consideration to the protocol and give its advice and consent to ratification.

GEORGE BUSH.

(III)

DAGAMSEH - EXT -000028

LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, April 10, 1990.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Protocol amending the 1971 Extradition Treaty Between the United States of America and Canada signed at Ottawa January 11, 1988. I recommend that the Protocol be transmitted to the Senate for advice and consent to ratification.

The Protocol supplements and amends the Extradition Treaty Between the United States and Canada, signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974 (27 U.S.T. 983; TIAS 8237). The Protocol would exclude specified crimes of violence, typically committed by terrorists, from the scope of the political offense exception to extradition. It therefore represents an important step toward improving law enforcement cooperation and countering the threat of international terrorism and other crimes of violence. In addition, the Protocol will help improve the implementation of the current Treaty in several other respects. Most significantly, the Protocol substitutes a dual criminality clause for the current list of extraditable offenses, so that, inter alia, parental child abduction and certain additional narcotics offenses will be covered.

Article 2 of the 1971 Extradition Treaty, as amended, which incorporates a Schedule of extraditable offenses, has been replaced in its entirety. Pursuant to the current Extradition Treaty, only crimes that are listed in the Schedule are considered extraditable offenses. As amended by Article I of the Protocol, Article 2 of the 1971 Treaty, as amended, adopts a dual criminality approach, which emphasizes extradition based on underlying criminal conduct rather than for a particular offense. A dual criminality clause permits extradition for any crime that is punishable in both countries by imprisonment or other detention for at least one year. Inclusion of a dual criminality clause, therefore, obviates the need to renegotiate or supplement the Treaty as offenses, such as computer-related crimes or money laundering, become punishable under the laws of both states.

Article I of the Protocol replaces Article 2 of the 1971 Treaty and provides that an offense is extraditable notwithstanding that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States. This provision will allow the United States to request extradition for offenses including interstate and foreign travel or transportation in aid of racketeering enterprises

(1)

DAGAMSEH - EXT -000029

2

even though the Canadian laws do not include analogous jurisdictional elements for similar underlying criminal behavior. The new provision also stipulates that offenses that relate to taxation or revenue or that are of a "purely fiscal character" will be extraditable offenses.

Article II of the Protocol is a technical amendment, deleting the Schedule of extraditable offenses annexed to the 1971 Treaty, as amended, and incorporated by reference in Article 2.

Article III of the Protocol deletes Article 3 of the 1971 Treaty, in which a particularized definition of "territory," which was necessary at that time to cover certain types of hijacking offenses, is no longer necessary, as both the United States and Canada are parties to the Hague Convention for the Suppression of Unlawful Seizure of Aircraft, done at The Hague December 16, 1970, and entered into force October 14, 1971, (Hijacking Convention) (22 U.S.T. 1641; TIAS 7192) and the Montreal Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation, done at Montreal September 23, 1971, and entered into force January 26, 1973, (Sabotage Convention) (24 U.S.T. 564; TIAS 7570).

Article 3(3) of the 1971 Treaty is amended to give the Executive or other appropriate Authority the discretion to extradite fugitives when the requesting state has jurisdiction over an offense in a situation where the laws of the requested state would not provide for jurisdiction in similar circumstances.

Article IV of the Protocol replaces Article 4 of the 1971 Treaty, and effectively limits the scope of the political offense exception. It specifies certain crimes which shall not be regarded as political offenses, including murder, manslaughter, malicious assault, kidnapping, specified explosives offenses, and conspiracy or attempt to commit any of the foregoing offenses.

In addition, Article IV of the Protocol includes a provision that excludes from the reach of the political offense exception any offense for which both the United States and Canada have an international treaty obligation to extradite the person or submit his case for prosecution; e.g., aircraft hijacking pursuant to the Hijacking Convention; aircraft sabotage pursuant to the Sabotage Convention; crimes against internationally protected persons, including diplomats, under the Convention on the Prevention and Punishment of Crimes against Internationally Protected Persons, including Diplomatic Agents, done at New York December 14, 1973 (28 U.S.T. 1975; TIAS 8532); and hostage taking pursuant to the International Convention against the Taking of Hostages, done at New York on December 17, 1979. This exception will also extend to crimes similarly defined in future multilateral treaties.

Article V of the Protocol replaces Article 7 of the 1971 Extradition Treaty, which allows the Requested State to defer surrender of a fugitive being proceeded against or serving a sentence in its territory until the conclusion of the proceedings and the full execution of any punishment. Under the Protocol, the Requested State has the discretion to choose to extradite to the Requesting State a fugitive who is serving a prison sentence in the Requested State before the expiration of his sentence. This alternative of temporary surrender is routinely included in our modern extradition treaties.

SBU -LAW ENFORCEMENT

DAGAMSEH - EXT -000030

3

Article VI of the Protocol replaces Article 11(3) of the current Treaty to extend the period of provisional arrest in the Requested State from forty-five days to sixty days, which is the time period most commonly provided under U.S. extradition treaties. The extension will allow prosecutors greater latitude in assembling extradition packages and in making necessary adjustments or additions to the documents.

Article VII of the Protocol amends the 1971 Treaty by adding a provision that establishes that, in cases where both states have jurisdiction to prosecute for an offense, the Executive Authority of the Requested State will consult with the Executive Authority of the Requesting State and make a decision whether to extradite the fugitive, or whether to submit the case to its competent authorities for the purpose of prosecution, after considering all relevant factors.

Article VIII of the Protocol provides that its provisions shall apply to any offense committed, any request made or any person found extraditable before or after the entry into force of the Protocol, but shall not apply to an offense committed before the Protocol enters into force if the offense in question was not an offense under the laws of both Contracting Parties at the time of its commission.

Article IX of the Protocol sets forth the procedures for ratification and entry into force.

I enclose, for the information of the Senate, an exchange of letters, dated January 11, 1988, which restates that the transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters," is an extraditable offense under the 1971 Extradition Treaty.

The Department of Justice joins the Department of State in favoring transmission of this Protocol to the Senate at the earliest possible date.

Respectfully submitted,

JAMES W. BAKER III.

Enclosure: As stated.

THE SECRETARY OF STATE,
*Washington, January 11, 1988.*

Hon. JOE CLARK, P.C., M.P.,
*Secretary of State for External Affairs of Canada, Ottawa.*

DEAR MR. MINISTER: I refer to the Protocol Amending the Treaty on Extradition between the United States and Canada we signed today and have the honor to address to you the following.

The United States and Canada recognize that the transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters", is an extraditable offense under the United States-Canada Extradition Treaty.

Where a person has been charged with or convicted of such an offense in Canada and is found within the jurisdiction of the United States, the United States agrees, upon request, to commence extradition proceedings against such a person pursuant to the Treaty in order that the person may be returned to Canada.

DAGAMSEH - EXT -000031

4

The United States will use its best efforts to honor Canadian requests for testimony, information, or other assistance pertaining to such abductions.

Canada and the United States agree to cooperate to deter such transborder abductions. To assist in achieving that purpose, the United States will continue to exert its best efforts to inform those engaged in business as bail bondsmen or bounty hunters and other interested parties of the positions set forth in this exchange of letters.

Canada and the United States agree to consult promptly concerning any case of transborder abduction involving bounty hunters which might arise in the future. The purpose of such consultations shall be to address matters relating to any such case, including any request by the Government of Canada for the return of the person so abducted. In the event of return, the Governments agree to co-operate to have the abducted person escorted to Canada and taken into custody at the border, pursuant to a request for provisional arrest, pending the outcome of extradition proceedings. For the purpose of these consultations, the principal law enforcement contact for the United States will be the Director of the Office of International Affairs of the Criminal Division of the Department of Justice.

I have the honor to propose that this letter and your reply constitute an understanding between our two Governments which is not intended to create or otherwise alter legal obligations for either Government nor to create or otherwise alter any rights or privileges for private parties.

Sincerely yours,

GEORGE P. SHULTZ.

OTTAWA, *January 11, 1988.*

JLA-0026.

Hon. GEORGE P. SHULTZ,
*Secretary of State of the United States of America.*

DEAR MR. SECRETARY: I have the honour to acknowledge receipt of your letter of today's date concerning transborder abduction of persons found in Canada to the United States of America by civilian agents of bail bonding companies, so-called "bounty hunters". I accept your proposal that your letter and this reply constitute an Understanding between our two Governments which is not intended to create or otherwise alter legal obligations for either Government nor to create or otherwise alter any rights or privileges for private parties.

Yours sincerely,

JOE CLARK.

DAGAMSEH - EXT -000032

PROTOCOL AMENDING THE TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA AND CANADA SIGNED AT WASHINGTON ON DECEMBER 3, 1971, AS AMENDED BY AN EXCHANGE OF NOTES ON JUNE 28 AND JULY 9, 1974

The Government of the United States of America and the Government of Canada;

Desiring to make more effective the Extradition Treaty between the Contracting Parties, signed at Washington on December 3, 1971, as amended by the agreement effected by an Exchange of Notes on June 28 and July 9, 1974 (hereinafter referred to as "the Extradition Treaty");

Have agreed as follows:

## ARTICLE I

Article 2 of the Extradition Treaty is deleted and replaced by the following:

## "ARTICLE 2

"(1) Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment.

"(2) An offense is extraditable notwithstanding

"(i) that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States, or

"(ii) that it relates to taxation or revenue or is one of a purely fiscal character."

## ARTICLE II

The SCHEDULE to the Extradition Treaty, as amended, is deleted.

## ARTICLE III

Paragraph (2) of Article 3 of the Extradition Treaty is deleted. Paragraph (3) of Article 3 of the Extradition Treaty is amended to read as follows:

"(2) When the offense for which extradition is requested was committed outside the territory of the requesting State, the executive or other appropriate authority of the requested State shall grant extradition if the laws of the requested State provide for jurisdiction over such an offense committed in similar circumstances. If the laws in the requested State do not so provide, the executive

(5)

SBU -LAW ENFORCEMENT

6
DAGAMSEH - EXT -000033

authority in the requested State may, in its discretion, grant extradition."

## ARTICLE IV

Paragraph (2) of Article 4 of the Extradition Treaty, as amended, is deleted and replaced by the following:

"(2) For the purpose of this Treaty, the following offenses shall be deemed not to be offenses within subparagraph (iii) of paragraph 1 of this Article:

"(i) An offense for which each Contracting Party has the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to its competent authorities for the purpose of prosecution;

"(ii) Murder, manslaughter or other culpable homicide, malicious wounding or inflicting grievous bodily harm;

"(iii) An offense involving kidnapping, abduction, or any form of unlawful detention, including taking a hostage;

"(iv) An offense involving the placing or use of explosives, incendiaries or destructive devices or substances capable of endangering life or of causing grievous bodily harm or substantial property damage; and

"(v) An attempt or conspiracy to commit, or counselling the commission of, any of the foregoing offenses, or aiding or abetting a person who commits or attempts to commit such offenses."

## ARTICLE V

Article 7 of the Extradition Treaty is deleted and replaced by the following:

## "ARTICLE 7

"When the person sought is being proceeded against or is serving a sentence in the requested State for an offense other than that for which extradition is requested, the requested State may surrender the person sought or postpone surrender until the conclusion of the proceedings or the service of the whole or any part of the sentence imposed."

## ARTICLE VI

Paragraph (3) of Article 11 of the Extradition Treaty is deleted and replaced by the following:

"(3) A person arrested shall be set at liberty upon the expiration of sixty days from the date of arrest pursuant to such application if a request for extradition and the documents specified in Article 9 have not been received. This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request and documents are subsequently received."

## ARTICLE VII

The Extradition Treaty is amended by adding the following after Article 17:

DAGAMSEH - EXT -000034

7

## "Article 17 bis

"If both contracting Parties have jurisdiction to prosecute the person for the offense for which extradition is sought, the executive authority of the requested State, after consulting with the executive authority of the requesting State, shall decide whether to extradite the person or to submit the case to its competent authorities for the purpose of prosecution. In making its decision, the requested State shall consider all relevant factors, including but not limited to:

"(i) the place where the act was committed or intended to be committed or the injury occurred or was intended to occur;

"(ii) the respective interests of the Contracting Parties;

"(iii) the nationality of the victim or the intended victim; and

"(iv) the availability and location of the evidence."

### Article VIII

Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, this Protocol shall apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date.

### Article IX

(1) This Protocol shall be subject to ratification in accordance with the applicable procedures of the Government of the United States and the Government of Canada and instruments of ratification shall be exchanged as soon as possible.

(2) The Protocol shall enter into force upon the exchange of instruments of ratification.

IN WITNESS WHEREOF, the undersigned, being duly authorized thereto by their respective Governments, have signed this Protocol.

DONE in duplicate at Ottawa, this 11th day of January 1988, in the English and French languages, the two texts being equally authentic.

For the Government of the United States of America.

GEORGE P. SHULTZ.

For the Government of Canada.

JOE CLARK.

O

DAGAMSEH - EXT -000035

| 107TH CONGRESS 2d Session | SENATE | TREATY DOC. 107–11 |
| --- | --- | --- |

## SECOND PROTOCOL AMENDING EXTRADITION TREATY WITH CANADA

---

# MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

SECOND PROTOCOL AMENDING THE TREATY ON EXTRADITION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF CANADA, SIGNED AT OTTAWA ON JANUARY 12, 2001



JULY 11, 2002.—The Protocol was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

---

U.S. GOVERNMENT PRINTING OFFICE

WASHINGTON : 2002

99–118

DAGAMSEH - EXT -000036

## LETTER OF TRANSMITTAL

THE WHITE HOUSE, *July 11, 2002.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Second Protocol Amending the Treaty on Extradition Between the Government of the United States of America and the Government of Canada, as amended, signed at Ottawa on January 12, 2001. In addition, I transmit, for the information of the Senate, the report of the Department of State with respect to the Second Protocol. As the report explains, the Second Protocol will not require implementing legislation.

The Second Protocol amends the Extradition Treaty Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an Exchange of Notes of June 28 and July 9, 1974, and by a Protocol signed at Ottawa on January 11, 1988.

The Second Protocol, upon entry into force, will enhance cooperation between the law enforcement communities of both nations. The Second Protocol incorporates into the U.S.-Canada Extradition Treaty a provision on temporary surrender of persons that is a standard provision in more recent U.S. bilateral extradition treaties. It also provides for new authentication requirements of documentary evidence, which should streamline the processing of extradition requests.

I recommend that the Senate give early and favorable consideration to the Second Protocol and give its advice and consent to ratification.

GEORGE W. BUSH.

(III)

DAGAMSEH - EXT -000037

# LETTER OF SUBMITTAL

---

DEPARTMENT OF STATE,
*Washington, May 31, 2002.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Second Protocol Amending the Treaty on Extradition Between the Government of the United states of America and the Government of Canada, signed at Ottawa on January 12, 2001 ("Second Protocol"). I recommend that the Second Protocol be transmitted to the Senate for its advice and consent to ratification.

The Second Protocol will strengthen the U.S.-Canada extradition relationship by incorporating a temporary surrender mechanism into the Extradition Treaty Between the United States of America and Canada, signed at Washington on December 3, 1971, as amended by an Exchange of Notes of June 28 and July 9, 1974, and by a Protocol signed at Ottawa on January 11, 1988 ("Extradition Treaty"). The Second Protocol will also streamline the extradition process by modifying the Extradition Treaty's authentication requirements relating to the admissibility of documentary evidence.

A temporary surrender mechanism has become a standard provision in more recent U.S. bilateral extradition treaties. It allows person who have been found extraditable to be temporarily surrendered to one State to stand trial while they are still serving sentences in the other State. Temporary surrender can be an important tool for use in cases where serious crimes have been committed in one country which might go unpunished if trial in that country were to be delayed for a long period while a sentence was being served for crimes committed in the other country. It enables sequential trials of individuals who have committed extraditable offenses in both countries at a time when witnesses and evidence to both crimes are more readily available.

Article 1 of the Second Protocol amends the Extradition Treaty to provide for a new Article 7bis, which will follow Article 7's existing provisions authorizing the State in receipt of an extradition request ("requested State") to delay surrender until after proceedings against a person in that State have been completed or the person's sentence in that State has been served.

New article 7bis(1) provides that if the requested State has granted an extradition request in accordance with the Treaty with respect to a person who already has been convicted and sentenced in the requested State, it may temporarily surrender the person to the requesting State for prosecution. It further provides that the courts of the requested State must not be divested by virtue of the temporary surrender of jurisdiction over any appeal or habeas cor-

(V)

DAGAMSEH - EXT -000038

VI

pus application relating to the conviction or sentence in the requested State.

Article 7bis(2) provides that the person surrendered pursuant to paragraph (1) must be kept in custody in the requesting State. It also provides that the person must be returned to the requested State within forty-five days after the conclusion of the proceedings for which the person's presence was required or at another time as specified by the requested State, in accordance with conditions determined by the Parties. This provision anticipates that authorities in the United States and Canada, which in some cases will include state-level authorities, will consult to determine appropriate conditions for the temporary surrender of an individual, including arrangements for the transfer and return of the prisoner, as well as any extraordinary matters that may be relevant, such as medical care requirements. Consistent with our normal extradition practice, any case-specific agreements or assurances relating to the temporary surrender would be concluded by the federal authorities on behalf of state authorities. Similar to the language in paragraph (1), Article 7bis(2) also provides that the transfer of the person back to the requested State will not divest the courts of the requesting State of jurisdiction over any appeal or habeas corpus application relating to the matter for which the prisoner was temporarily surrendered.

Article 7bis(3) provides that the time spent in custody in the requesting State may be credited to the sentence in the requested State. In the case of the United States, credit for time served by a person surrendered to Canadian authorities may differ among U.S. state and federal authorities.

Article 7bis(4) provides that the requested State can waive the return of the surrendered person in the event the person's sentence in the requested State expires during the temporary surrender period. Article 7bis(4) provides that in such cases the person's surrender shall be considered a "final surrender" under the Extradition Treaty.

Because temporary surrender is contingent on a grant of extradition, Article 7bis(5) provides that the requesting State does not have to make a further request for the extradition of a person who has been returned to the requested State after having been convicted and sentenced in the requesting State for the offense for which temporary surrender was granted.

Article 7bis(6) provides that a person who has been returned to the requested State, after having been convicted and sentenced during a temporary surrender, must be finally surrendered once the custodial portion of the person's sentence in the requested State has been completed or, if the requested State so specifies, at an earlier time. This provision contemplates that the requested State will finally surrender a person who has been released on parole or under other conditions. It also envisions that the requested State may choose to surrender the person at an earlier time.

Article 7bis(7) recognizes that there may be reasons not to proceed with final surrender even though the person was convicted and sentenced during a temporary surrender. Article 7bis(7) (a) provides that final surrender will not take place when the requesting State advises that it is no longer required because the sentence

SBU -LAW ENFORCEMENT

DAGAMSEH - EXT -000039

VII

imposed in the requesting State has expired or for other reasons. Similarly, Article 7bis(7) (b) provides that the person will not be surrendered to the requesting State in the event the competent authority of the requested State revokes its original grant of extradition.

Article 2 of the Second Protocol will establish a new framework for the admissibility of documentary evidence in support of a request for extradition by replacing existing Article 10(2) of the Extradition Treaty.

Consistent with U.S. extradition law on the admissibility of documentation, new Article 10(2)(a) reiterates the existing requirement that, in the case of a request from Canada, documents be authenticated by an officer of the Department of Justice of Canada and certified by the principal diplomatic or consular office of the United States in Canada. Article 10(2)(b), however, changes existing requirements with respect to requests emanating from the United States, so as to take advantage of changes in Canadian law regarding the admissibility of extradition documents in Canadian courts. Specifically, Article 10(2)(b) eliminates the requirement that the United States have its documentary evidence in support of extradition requests to Canada authenticated by an officer of the U.S. Department of State and certified by the principal diplomatic or consular officer of Canada in the United States. Instead, Article 10(2) (b) streamlines the authentication process by allowing documents to be certified by a judicial authority or prosecutor who attests that the evidence is available for trial and is sufficient to justify prosecution under the law of the prosecuting jurisdiction. When the person whose extradition is sought has already been convicted, documents supporting the U.S. request are to be certified by a judicial, prosecuting or correctional authority who can attest to the fact that the documents are accurate. These changes should simplify and thereby reduce the administrative burden of processing extradition requests by the United States.

New Article 10(2) (c) provides an alternative to subparagraphs (a) and (b), by providing that documents may also be certified or authenticated in any other manner accepted by the law of the requested State. This addition will enable both countries to take advantage of any changes to their applicable laws.

Article 3 of the Second Protocol addresses the relationship between the Second Protocol and the Extradition Treaty. Paragraph (1) provides that the Second Protocol will form an integral part of the Extradition Treaty. Paragraph (2) provides for retroactivity, noting that, notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, the Second Protocol will apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date. Finally, paragraph (3) provides that the Second Protocol is subject to ratification, and enters into force upon the exchange of instruments of ratification. The Second Protocol would terminate upon termination of the Extradition Treaty.

The Second Protocol does not require implementing legislation. A Technical Analysis explaining in detail the provisions of the Second Protocol is being prepared by the United States negotiating delegation, consisting of the Departments of State and Justice, and will

DAGAMSEH - EXT -000040

VIII

be submitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in favoring approval of this Second Protocol by the Senate at an early date.

Respectfully submitted,

COLIN L. POWELL.

DAGAMSEH - EXT -000041

SECOND PROTOCOL AMENDING THE TREATY ON EXTRADITION

BETWEEN

THE GOVERNMENT OF THE UNITED STATES OF AMERICA

AND

THE GOVERNEMENT OF CANADA

Signed at Washington on December 3, 1971,
as amended by an Exchange of Notes at Washington on June 28 and July 9, 1974,
and by a Protocol signed at Ottawa on January 11, 1988

THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND
THE GOVERNMENT OF CANADA (hereinafter "the Parties");

RECOGNIZING the close bilateral relationship which exists between them,
reflected in numerous instruments and mechanisms of legal cooperation;

COMMITTED to strengthening legal cooperation in the fight against crime;
and

DESIRING to make more effective the Extradition Treaty between the Parties,
signed at Washington on December 3, 1971 (hereinafter "the Extradition Treaty"), as
amended by an exchange of notes of June 28 and July 9, 1974, and the Protocol to the
Extradition Treaty between the Parties, signed at Ottawa on January 11, 1988
(hereinafter "the Protocol");

HAVE AGREED as follows:

ARTICLE 1

The Extradition Treaty is amended by adding the following after Article 7:

"Article 7 bis

1.    The requested State, after granting an extradition request made in accordance
with the Extradition Treaty, may temporarily surrender a person who has been
convicted and sentenced in the requested State, in order that the person sought may be
prosecuted in the requesting State. The temporary surrender of the person shall not
divest the Courts in the requested State of jurisdiction over any appeal or habeas corpus
application relating to the conviction or sentence that otherwise may be available under
the laws of the requested State.

(1)

DAGAMSEH - EXT -000042

2

2.      A person temporarily surrendered pursuant to paragraph 1 shall be kept in custody in the requesting State. The person shall be returned to the requested State within forty-five (45) days after the conclusion of the proceedings for which the person's presence was required in the requesting State or at another time as specified by the requested State, in accordance with conditions to be determined by the Parties for that purpose.   The return of the person to the requested State shall not divest the Courts in the requesting State of jurisdiction over any appeal or habeas corpus application that otherwise may be available under the laws of that State, in relation to the matter for which the person was temporarily surrendered.

3.      The period of time spent in custody in the requesting State may be credited to the sentence in the requested State.

4.      When the sentence that the person was serving in the requested State expires during the temporary surrender, the requested State may waive the return of the person and the surrender will be considered to be a final surrender.  A "final surrender" is a surrender of a person pursuant to this Treaty other than as provided for by this Article.

5.      Subject to paragraph 7, if a person temporarily surrendered and returned to the requested State has been sentenced to imprisonment in the requesting State for the offence for which the person was temporarily surrendered, the person shall be finally surrendered to the requesting State, in accordance with paragraph 6, without a further request for extradition.

6.      Final surrender shall take place when the person has finished serving the custodial portion of the sentence in the requested State, or at an earlier time specified by the requested State.

7.      Final surrender shall not take place when:

    (a)     the requesting State advises that final surrender is no longer required due to the expiration of the sentence imposed or for other reasons; or

    (b)     after the temporary surrender, the warrant or order for the final surrender of a person sought is revoked by the competent authority of the requested State."

## ARTICLE 2

Article 10(2) of the Extradition Treaty is deleted and replaced by the following text:

"(2)   The documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when:

    (a)     in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada;

DAGAMSEH - EXT -000043

3

(b)    in the case of a request emanating from the United States for a person
who is sought for prosecution, they are certified by a judicial authority
or prosecutor who attests that the evidence is available for trial and is
sufficient to justify prosecution under the law of the prosecuting
jurisdiction. In the case of a request emanating from the United States
for a person who is sought in connection with a conviction, the
documents must be certified by a judicial, prosecuting or correctional
authority who attests to the fact that the documents are accurate; or

(c)    they are certified or authenticated in any other manner accepted by the
law of the requested State."

## ARTICLE 3

1.    This Second Protocol shall form an integral part of the Extradition
Treaty.

2.    Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty,
this Second Protocol shall apply in all cases where the request for extradition is
made after its entry into force regardless of whether the offence was committed
before or after that date.

3.    This Second Protocol shall be subject to ratification, and shall enter into
force upon the exchange of instruments of ratification. It shall terminate upon
termination of the Extradition Treaty.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their
respective Governments, have signed this Second Protocol.

DONE in duplicate at _Ottawa_    this _Twelfth_ day of _January_ 2001
in the English and French languages, the two texts being equally authentic.

FOR THE GOVERNMENT OF
THE UNITED STATES OF
AMERICA

FOR THE GOVERNMENT
OF CANADA

O

SBU -LAW ENFORCEMENT

DAGAMSEH - EXT -000044

Embassy of Canada    Ambassade du Canada

Note No. 12591

The Embassy of Canada presents its compliments to the Department of State and has the honour to request the extradition of Ahmad Tayseer Dagamseh, a Jordanian citizen, born on ███████████

Photographs of the person sought are appended to the documents submitted in support of the extradition request.

Canada is seeking the extradition of Ahmad Tayseer Dagamseh to stand trial in relation to:

- One count of Sexual Assault, contrary to section 271 of the *Criminal Code*;

Information #998-23-23108816 was sworn by Officer Bernard Scheid on December 24, 2023, before Justice of the Peace Kristine Diaz in the Province of Ontario. Warrant for Arrest dated April 15, 2024, was issued by Justice of the Peace T. Oudekerk in the Province of Ontario.

There is no statute of limitations in respect of the offence for which the person sought stands charged. The indictable offence is punishable by more than one-year imprisonment.

Ahmad Tayseer Dagamseh is presently held in custody at 4250 Federal Drive, Buffalo Federal Detention facility in Batavia, New York, USA.

The Prosecuting Attorney is Amanda Rubaszek, Crown Counsel, International Assistance, Ministry of the Attorney General for the Province of Ontario, telephone 416-315-2497.

.../2

Canada

DAGAMSEH - EXT -000045

-2-

The Police Contact is Constable Ardiana Berisha, London Police Services, Ontario, email ABerisha@londonpolice.ca.

The Embassy of Canada avails itself of this opportunity to renew to the Department of State the assurances of its highest consideration.



WASHINGTON, D.C.

January 10, 2025



DAGAMSEH - EXT -000046

Embassy of the United States of America

# Certificate to be Attached to Documentary Evidence Accompanying Requisitions in the United States for Extradition

## AMERICAN FOREIGN SERVICE

Ottawa, Canada, January 8, 2025

I, David L. Cohen, Ambassador of the United States of America at Ottawa, Canada, hereby certify that the annexed papers, being authenticated supporting documents proposed to be used upon an application for the extradition from the United States of **Ahmad Tayseer DAGAMSEH** who is wanted to stand trial in the Province of Ontario for: one count of Sexual Assault, contrary to Section 271 of the *Criminal Code* are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals of Canada, as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed this 8th day of January, 2025.

David L. Cohen
Ambassador of the
United States of America



Form 36- Foreign Service                    SENSITIVE BUT UNCLASSIFIED



DAGAMSEH - EXT -000047

Department of Justice          Ministère de la Justice
Canada                        Canada

Ottawa, Canada
K1A 0H8

## <u>CERTIFICATE OF AUTHENTICATION</u>

IN THE MATTER OF the request for the extradition of **Ahmad Tayseer DAGAMSEH** from the United States of America to Canada

I, Antoinette Issa, Counsel, International Assistance Group, Department of Justice of Canada, do hereby certify:

THAT attached to this Certificate is authenticated documentation presented by Canada in support of the request for the extradition of **Ahmad Tayseer DAGAMSEH** who is wanted to stand trial in the Province of Ontario for: one count of Sexual Assault, contrary to Section 271 of the *Criminal Code.*

THAT the documentation attached to this certificate is composed of:

- the Affidavit of Law of Amanda Rubaszek, Crown Counsel, Ministry of Attorney General for the Province of Ontario, to which is appended:

    o  as exhibit "A", a copy of an Information, charging DAGAMESH with one count of sexual assault; and

    o  as exhibit "B", a copy of the arrest warrant presently outstanding in respect of the charge contained in the aforementioned Information.

- the Affidavit of Fact of Constable Ardiana Berisha of the London Police Service, to which is appended:

    o  as exhibit "A", a photograph of DAGAMESH, taken by London Police Service when DAGAMSEH was arrested and booked, on December 21, 2023.

    o  As exhibit "B", a Facebook photo of DAGAMSEH.

    o  As exhibit "C", a true copy of DAGMSEH's fingerprints taken by the London Police Service, on December 21, 2023.



DAGAMSEH - EXT -000048

THAT David Friesen, Crown Counsel, whose original signature appears at the end of the Affidavit of Law of Amanda Rubaszek, is a Barrister and Solicitor and Commissioner of Oaths for the Province of Ontario, having been duly commissioned and duly authorized by the laws thereof to administer oaths within the said Province.

THAT Trina Andrea McGahey, whose original signature appears at the end of the Affidavit of Fact of Ardiana Berisha, is a Commissioner of Oaths for the Province of Ontario, having been duly commissioned and duly authorized by the laws thereof to administer oaths within the said Province

The Seal of the Minister of Justice of Canada is hereby affixed this 7th day of January 2025.

_Antoinette Issa_
_____
Antoinette Issa, Counsel
International Assistance Group
Department of Justice of Canada

DAGAMSEH - EXT -000049

| | | |
|---|---|---|
| CANADA | ) | HIS MAJESTY THE KING |
| | ) | |
| PROVINCE OF ONTARIO | ) | v. |
| | ) | |
| TORONTO REGION | ) | AHMAD TAYSEER DAGAMSEH |

IN THE MATTER of a request by Canada for the extradition of **AHMAD TAYSEER DAGAMSEH** from the United States of America with respect to offences under the *Criminal Code* of Canada.

---

## AFFIDAVIT OF LAW

---

I, **Amanda Rubaszek**, of the City of Pickering in the Regional Municipality of Durham in the Province of Ontario, Canada, **MAKE OATH AND SAY AS FOLLOWS:**

## A.    QUALIFICATIONS

1.     I am a citizen of Canada.  I reside in the City of Pickering in the Province of Ontario, Canada. I am a lawyer qualified to practice law in the Province of Ontario and have been so qualified since July 2005. Since then, I have practiced law, and continue to practice law, in the employment of the Ministry of the Attorney General for the Province of Ontario, Canada, as Crown Counsel with the Crown Law Office - Criminal. As a result of my training and experience, I am knowledgeable about criminal procedure and jurisprudence arising from both the *Criminal Code* of Canada and the common law in Canada.

2.     The Crown Law Office - Criminal is a branch of the Criminal Law Division of the Ministry of the Attorney General for the Province of Ontario, which has a wide variety of responsibilities relating to the administration of criminal justice in Ontario. The main responsibility of the Crown Law Office – Criminal involves the representation of the Crown in all criminal appeals in indictable matters arising in Ontario.  The Crown Law Office – Criminal also prosecutes serious crimes involving such matters as complex fraud, corruption, organized crime, and offences against the administration of justice.

1

DAGAMSEH - EXT -000050

3.     The Crown Law Office – Criminal has been directed to exercise responsibility on behalf of the Attorney General for Ontario with respect to applications by the Attorney General for Ontario for the extradition to Canada from foreign jurisdictions of persons charged in Ontario with offences contrary to the *Criminal Code* of Canada. As part of my responsibilities at the Crown Law Office – Criminal, I accept requests from Crown Prosecutors who seek to have a person extradited from a foreign jurisdiction. I manage the request and help the Prosecutor and the Police Investigators prepare evidence and materials that will meet the requirements of foreign jurisdictions for official requests for extradition. I also work with the Central Authority in Canada, the International Assistance Group, at the Department of Justice.  I forward the materials prepared for an extradition request to the International Assistance Group so that they may be reviewed by the Central Authority in Canada and, if approved, sent to the foreign jurisdiction.

4.     In this case, I have worked directly with the investigator, Constable Ardiana Berisha of the London Police Service, and have been in touch with the Assistant Crown Attorney Cara Douglas, who will prosecute Ahmad Tayseer DAGAMSEH ("DAGAMSEH") should he be returned to Canada to face trial.  I have reviewed all of the evidence submitted with this request. I am familiar with the facts of this case and I have an expertise in criminal law such that I am able to attest to the sufficiency of the case and the jurisdiction in Canada to prosecute this offence.

### B.    OVERVIEW OF EXTRADITION REQUEST

5.     Canada is seeking the extradition of DAGAMSEH so that he may be prosecuted on one count of sexual assault alleged to have been committed on November 20, 2023. DAGAMSEH is presently being detained in the United States of America on an immigration issue.

6.     Under Canadian law, a person is formally charged with a crime when an Information is sworn before a justice (i.e. a Justice of the Ontario Court of Justice or a Justice of the Peace).  The charge is formally instituted when a person, usually a peace officer, swears under oath that he or she has reasonable and probable grounds to believe that an accused has committed the offence(s) detailed in the Information.  Following the laying of an Information, a warrant for the arrest of the accused person may be issued where the Justice considers that a case for doing so is made out.

DAGAMSEH - EXT -000051

7.      In the present case, charges were laid on December 24, 2023 by the swearing of an Information by police Constable Bernard Scheid before the Honorable Justice Abdul CHARBAR of the Ontario Court of Justice, London, Ontario, charging DAGAMESH with one count of sexual assault. A copy of the Information, which has been redacted to remove reference to the victim's name to protect her identity and to comply with the publication ban on her name, is attached to my affidavit as **Exhibit "A"**.[1]

8.      On April 15, 2024, a Bench Warrant for the Arrest of DAGAMESH was issued by the Honorable Justice Tara OUDEKERK of the Ontario Superior Court of Justice, London, Ontario after DAGAMSEH failed to attend court on that date. The arrest warrant, a copy of which is attached as **Exhibit "B"**, is presently outstanding in respect of the charge contained in the aforementioned Information.

9.      I have reviewed Cst. Berisha's Affidavit, which accompanies this request, and the information contained therein identifying DAGAMSEH as the offender.  I have also reviewed the material Cst. Berisha submitted with this request. Accordingly, I am familiar with the allegations and the police investigation that has taken place in this case.  As a result, I verily believe that DAGAMSEH has been charged with sexual assault arising out of an alleged incident that occurred on November 20, 2023. I have been informed and I believe that DAGAMSEH has not yet been prosecuted in Canada in relation this offence.

## C.    APPLICABLE LAW

### i)    General principles

10.    The offence with which DAGAMSEH has been charged is alleged to have occurred on November 20, 2023.  Prosecution is governed by the statute in force at the time of the offences.  At the present time and at the time of these offences, the applicable statute was the *Criminal Code* of Canada, Revised Statutes of Canada, 1985, chapter C-46, as amended.  This statute contains the law relating to criminal offences for all of Canada and it therefore applies to Ontario.

11.    The *Criminal Code* sets out definitions of offences, the maximum sentences possible for those offences, and sometimes a minimum sentence that must be imposed.  In general, the provisions as

---

[1] On January 7, 2025 I was advised by Cst. Berisha that pages that were blank were not scanned, which is why it appears that several pages are missing from Exhibit A.  I have confirmed that there are no other pages and that the certified copy attached as Exhibit A was scanned from the original held at the Ontario Court of Justice.

DAGAMSEH - EXT -000052

they were worded at the time of the alleged offence are what would be applicable to a trial of these charges in Ontario.

12.    Under Canadian law, criminal offences are divided into three categories: (i) indictable offences, (ii) summary conviction offences and (iii) hybrid offences that are, at the election of the prosecution, either indictable or summary conviction.  In general, indictable offences are more serious offences carrying more severe penalties. Summary conviction offences are generally considered to be less serious offences and carry less severe penalties.  A hybrid offence is deemed to be indictable unless and until the Crown elects to proceed by way of summary conviction.

13.    The Information charges DAGAMSEH with sexual assault contrary to s. 271 of the *Criminal Code*.  This is a hybrid offence and is subject to the Crown's election as to whether to proceed by indictment or summary conviction.  The Crown has elected to proceed by way of indictment. In Canada, there is no statutory limitation period of general application in respect of indictable offences. Therefore, there is no limitation period with respect to the offence for which DAGAMSEH is charged.

ii)    **Applicable *Criminal Code* of Canada provisions**

14.    The *Criminal Code* contains provisions that codify the offence with which DAGAMSEH has been charged.  Those provisions, as they existed during the time of the alleged offences, duly enacted and proclaimed into force, and as would apply in the event of a trial in the within case, are set out below.

*Sexual assault*

15.    Sexual assault is a hybrid offence prohibited by section 271 of the *Criminal Code*. The offence and prescribed penalty as it existed at the time of the alleged offence is as follows:

**Sexual assault**

271 Everyone who commits a sexual assault is guilty of

>        (a) an indictable offence and is liable to imprisonment for a term of not more than 10 years or, if the complainant is under the age of 16 years, to

4

DAGAMSEH - EXT -000053

imprisonment for a term of not more than 14 years and to a minimum punishment of imprisonment for a term of one year; or

(b) *[not included because not applicable].*

16.     Sexual assault is an assault under s. 265(1) of the *Criminal Code* committed in circumstances of a sexual nature. Assault is defined in s. 265 of the *Criminal Code* as follows:

s. 265. (1) A person commits an assault when

(a) without the consent of another person, he applies force intentionally to that other person, directly or indirectly;
(b) he attempts or threatens, by an act or a gesture, to apply force to another person, if he has, or causes that other person to believe on reasonable grounds that he has, present ability to effect this purpose; or
(c) while openly wearing or carrying a weapon or an imitation thereof, he accosts or impedes another person or begs.

(2) This section applies to all forms of assault, including sexual assault, sexual assault with a weapon, threats to a third party or causing bodily harm and aggravating sexual assault.

[…]

17.     An assault is the intentional application of force. The force itself need not be violent; it can even be gentle, but it must be applied intentionally. An assault is a sexual assault when the force is applied in circumstances of a sexual nature. More specifically, the Supreme Court of Canada has defined "sexual assault" as an assault committed in circumstances such that the sexual integrity of the victim is violated. The test to be applied in determining whether the conduct has the requisite sexual nature is objective. The court must determine whether the sexual or carnal context of the assault would be visible to a reasonable observer. The part of the body touched, the nature of the contact, the situation in which it occurred, the intent and purpose of the assault, the words, gestures and threats accompanying the act, and all other circumstances surrounding the conduct are relevant.

18.     To establish sexual assault, the Crown must prove beyond a reasonable doubt that the complainant did not consent to the touching that was of a sexual nature. Section 273.1(1) of the *Criminal Code* defines consent as the "voluntary agreement of the complainant to engage in the sexual activity in question." Section 273.1(2) provides a non-exhaustive list of circumstances in

DAGAMSEH - EXT -000054

which no consent is obtained, including, *inter alia*, where the complainant is "incapable of consenting" to the activity, where the accused induces the complainant to engage in the activity by abusing a position of trust, power or authority, or where the complainant "expresses, by words or conduct, a lack of agreement to engage in the activity".

19.    Under section 274 of the *Criminal Code*, corroboration of a complainant's allegation of sexual assault is not required:

> 274  If an accused is charged with an offence under section 151, 152, 153, 153.1, 155, 160, 170, 171, 172, 173, 271, 272, 273, 286.1, 286.2 or 286.3, no corroboration is required for a conviction and the judge shall not instruct the jury that it is unsafe to find the accused guilty in the absence of corroboration.

**(iii) Opinion**

20.    I have reviewed the charging document and the arrest warrant issued against DAGAMSEH in relation to sexual assault. I have also reviewed the affidavit of Cst. Berisha and all of the information that has been provided to me in connection with this request.

21.    In my opinion, the evidence summarized in the officer's affidavit establishes a *prima facie* case that DAGAMSEH is guilty of the offence with which he is charged.  That is to say, a reasonable trier of fact, properly instructed in the law could, on the available evidence, find beyond a reasonable doubt that DAGAMSEH is guilty of sexual assault.

22.    The anticipated evidence of ▮▮▮ is expected to show that she was sexually assaulted by DAGAMSEH on November 20, 2023 in a parking garage at White Oaks Mall in London, Ontario. That day, DAGAMSEH attended ▮▮▮'s workplace and wanted to speak to her.  ▮▮▮ and DAGMSEH were known to one another, having met the month before.  DAGAMSEH was courting ▮▮▮, but ▮▮▮. had decided to break things off after becoming concerned that he wanted to marry her to obtain Canadian citizenship.  ▮▮▮ agreed to go for a walk with DAGAMSEH outside the mall so they could talk.  They walked to the parking garage and entered the stairwell.  After proceeding to the second last level, they stopped and sat on the stairs to talk.

6

DAGAMSEH - EXT -000055

23.    ▆▆▆ is expected to testify that DAGAMSEH began begging her to become his wife.  He then leaned over and kissed her on the lips.  ▆▆▆ pushed him away and told him "no".  She tried explaining to him that she had to go back to work, but DAGAMSEH took her phone and then kissed her again in an aggressive manner.  He then pushed her, causing her to fall backwards onto her back, and positioned himself on top of her.  The victim felt DAGAMSEH's erect penis rubbing against her vaginal area over her clothes.  ▆▆▆ told him to get off her and to stop touching her.  As she told police in her police statement, she was crying and trying to push him away, which caused DAGAMSEH to become more aggressive and hit her.  ▆▆▆ was finally able to remove herself from underneath him, at which time she picked up her cell phone and ran away.

24.    In my opinion, ▆▆▆'s anticipated testimony is capable of establishing that DAGAMSEH committed the offence of sexual assault.  There was an intentional application of force by the accused against ▆▆▆'s body and the touching was undeniably sexual in nature.   He forcefully kissed her more than once despite being told "no" and he also pushed her down to the ground and then got on top of her.  Once positioned above her, he began rubbing his penis against her body.  The sexual nature of the assault is apparent from the parts of her body touched, his obvious sexual arousal, and his physical movements of rubbing himself against ▆▆▆'s vagina.

25.    It is worth observing that a judge or jury may convict an accused solely on the testimony of the victim.  As the Supreme Court of Canada has stated, a trier of fact is entitled to believe the uncorroborated evidence of the complainant, otherwise it would be impossible to convict in the many similar cases where there is a long delay in the disclosure of the uncorroborated allegations of a complainant in a sexual assault case.  Therefore, the fact that the case relies solely on the complainant's testimony is not a bar to a successful prosecution.

## D.    OTHER ISSUES

26.    The offence with which DAGAMSEH has been charged is not of a political character.  The charge has not been laid against DAGAMSEH for the purpose of prosecuting him on account of his race, tribe, nationality, religion, sex or political opinion, and that, if he returned to Canada, he will not be prejudiced by reason of his race, tribe, nationality, religion, sex or political opinion.

DAGAMSEH - EXT -000056

27.    Extradition is sought and, if successful, the Crown will proceed with the prosecution of DAGAMSEH for the aforementioned criminal offence.


**E.    CONCLUSION**

28.    This affidavit is made in good faith in support of a request by Canada for the extradition of DAGAMSEH from the United States of America to Canada, so that he may be prosecuted for the offence of sexual assault and for no other or improper purpose.


**SWORN BEFORE ME** at the City          )
of Toronto in the Toronto Region          )
in the Province of Ontario, Canada,          )
this 7th day of January, 2025.          )
          )          Amanda Rubaszek
          )


David Friesen Crown Counsel
Barrister and Solicitor and
Commissioner of Oaths
LSO # 52835I

DAGAMSEH - EXT -000057

THIS IS EXHIBIT **"A"** TO THE AFFIDAVIT OF

AMANDA RUBASZEK SWORN BEFORE ME

THIS 7th DAY OF JANUARY, 2025

David Friesen     Crown Counsel
Barrister and Solicitor and
Commissioner of Oaths
LSO # 528351

DAGAMSEH - EXT -000058

| | |
|---|---|
| ☐ IPV (Intimate Partner Violence / *Violence contre un partenaire intime*) | ☐ Replacement Information / *Dénonciation de remplacement* |
| ☐ S (Impaired driving with substances /*Conduite avec capacités affaiblies par des substances*) | ☐ V (Vessel / *Bateau*) |

London Police Service
Occ#:23-110213
Case ID:239669

Jan. 30, 2024: 09:30am courtroom 4

Arrest Date: 211223    15 month Flag: 220325    18 month Flag: 210625
*Date d'arrestation*    *Alerte à 15 mois (ddmmyy / jjmmaa) Alerte à 18 mois (ddmmyy / jjmmaa)*

Sworn Date: 241223    15 month Flag: 250325    18 month Flag: 240625
*Date d'assermentation*    *Alerte à 15 mois (ddmmyy / jjmmaa) Alerte à 18 mois (ddmmyy / jjmmaa)*

998 23 23108816

Information Number / *Nº de la dénonciation*

JAN 3 0 2024

| | |
|---|---|
| ☐ Non-Disclosure Order Pursuant to s. 486.31 *Ordonnance de non-divulgation, art. 486.31* | ☒ Publication ban pursuant to S.486.4(1) Ban |
| ☐ Non-communication s. 515(12) & 516(2) *Non-communication, par. 515(12) et 516(2)* | ☐ Provisions of 530(3) complied with *Dispositions du par. 530(3) observées* |

Kristine M. Diaz
Justice of the Peace

**Form 2 Information / *Formule 2 Dénonciation***

Sections 506, 508.1 and 788 of the Criminal Code / *Articles 506, 508.1 et 788 du Code criminel*

| | |
|---|---|
| CANADA | Information of: **Bernard Scheid** |
| PROVINCE OF ONTARIO | *Dénonciation de :* |
| *PROVINCE DE L'ONTARIO* | of    THE CITY OF LONDON    **Police Officer** |
| SOUTHWEST | *de*    (occupation / *profession*) |
| · (Region / *Région*) | hereinafter called the informant / *ci-après appelé(e) le dénonciateur* |

The informant says that he/she believes on reasonable grounds that
*Le dénonciateur déclare qu'il a des motifs raisonnables de croire que*

(1) DAGAMSEH, Ahmad Tayseer    DOB: ████████
    19 AUGUSTA CRES, LONDON, ON

COUNT 1

Ahmad Tayseer DAGAMSEH

on or about the 20th day of November in the year 2023 at the City of London in the
Southwest Region did commit a sexual assault on ████████████ contrary to Section
271 of the Criminal Code of Canada.

---------------------------------- End of Charges/Counts ----------------------------------

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
COPIE AUTHENTIQUE CERTIFIÉE
ET CONFORME À L'ORIGINAL

OCT 2 3 2024

CLERK OF THE COURT
ONTARIO COURT OF JUSTICE
GREFFIER DE LA COUR
COUR DE JUSTICE DE L'ONTARIO

DAGAMSEH - EXT -000059

R. v. DAGAMSEH,AHMAD                    OCC#:23-110213

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
COPIE AUTHENTIQUE CERTIFIÉE
ET CONFORME À L'ORIGINAL

OCT 2 3 2024

CLERK OF THE COURT
ONTARIO COURT OF JUSTICE
GREFFIER DE LA COUR
COUR DE JUSTICE DE L'ONTARIO

**Declaration of Informant / Déclaration du dénonciateur**

I declare that all matters contained in the Information are true to my knowledge and belief, pursuant to s. 508.1(2) of the *Criminal Code*.
*Je soussigné(e) déclare tous les renseignements contenus dans la présente dénonciation sont, à ma connaissance, véridiques, en vertu de par. 508.1(2) du Code criminel.*

Dated at          CITY of LONDON                    in the Province of Ontario, this 24th  day of DECEMBER          , 20 23
*Fait à(au)*                                        *dans la province d'Ontario, ce          jour de*

| Declared / Déclaré | |
|---|---|
| Bernard Scheid BG (M) | Digitally signed by Bernard Scheid BG (M) Date: 2023.12.24 11:40:24 -05'00' |

Digital Signature of Informant / *Signature numérique du dénonciateur*

London Police Service
Occ#:23-110213

DAGAMSEH - EXT -000060

Police Case ID:236009
Jan. 30, 2024, 09:30AM courtroom : 4

Intake Court Endorsement

Information#: 998 23 23108816

This Information is Accepted on its face.

Ahmad DAGAMSEH:
     Undertaking: Confirm

Dated in the Province of Ontario, this 24th day of December 2023.
Fait à/au dans la province de l'Ontario, ce 24 décembre 2023.

Justice of the Peace
Ontario Court
of Justice

Digitally signed by
Abdul Chahbar
Date:2023.12.24
12:18:26 -05'00'

This document has been digitally signed. / Ce document a été signé numériquement.

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
COPIE AUTHENTIQUE CERTIFIÉE
ET CONFORME À L'ORIGINAL
                            OCT 2 3 2024

CLERK OF THE COURT
ONTARIO COURT OF JUSTICE
GREFFIER DE LA COUR
COUR DE JUSTICE DE L'ONTARIO

| | | | | | |
|---|---|---|---|---|---|
| Arrest Date: | 211223 | 15 month Flag: | 220325 | 18 month Flag: | 210625 |
| *Date d'arrestation* | | *Alerte à 15 mois (ddmmyy / jjmmaa)* | | *Alerte à 18 mois (ddmmyy / jjmmaa)* | |
| Sworn Date: | 241223 | 15 month Flag: | 250325 | 18 month Flag: | 240625 |
| *Date d'assermentation* | | *Alerte à 15 mois (ddmmyy / jjmmaa)* | | *Alerte à 18 mois (ddmmyy / jjmmaa)* | |

DAGAMSEH - EXT -000061

☐ Accused notified court under s. 530 _____
*Tribunal avisé par l'accusé en vertu de l'art. 530*

☐ Interpreter Required
*Interprète requis*

☐ Designation Filed
*Désignation déposée*

998 23 23108816
Information Number / Nº de la dénonciation

| Date / *Date* | Accused / *Accusé* | Adjournment Date / *Date d'ajournement* | Adjournment Details / *Détails sur l'ajournement* | Designation / *Désignation* | Counsel As Agent / *Avocat mandataire* | Fails to Appear / *Omet de comparaître* | Bench Warrant / *Mandat d'arrêt* | Discretion / *Discrétion* | Certificate of Default |
|---|---|---|---|---|---|---|---|---|---|
| JAN 3 0 2024 | DAGAMSEH | 31 Jan 2024 | #2 @ 9:30 | | | | | | |
| | ✳ ~ ARABIC INTERPRETER ORDERED | | | | | | | | |
| | To Address Criminal and Immigration matters | | | | | | | | |
| JAN 3 1 2024 | Dagamesh | 20 Feb 24 | 2-980 cnr confirm cnsl | | | | | | |
| | | | (IP)- Arabic Int Req | | | | | | |
| FEB 2 0 2024 | Dagamesh, A | 19 Mar '24 | #2 9:30 (IP) cnf cnsl | | | | | | |
| | | | (IP) Arabic Int Req - | | | | | | |
| MAR 1 9 2024 | DAGAMSEH | Apr 16/24 | #4 930 rev det Dcl | | | | | | |
| | | 15 | (no Inter required on this date | | | | | | |
| APR 15 2024 | Dagamesh | 11:40am | BW Not Endorsed | | | | | | |
| | | | Cnsl Remoted | | | | | | |

| Date / *Date* | Clerk / *Greffier* | Crown / *Couronne* | For the Accused / *Pour l'accusé* | Justice's Initials / *Initiales du juge* |
|---|---|---|---|---|
| JAN 3 0 2024 | FL Mr KG | Bloch | Self + DC | KD |
| JAN 3 1 2024 | W ON | Knelsen | Self | BW |
| FEB 2 0 2024 | TL KG | Ficern Gimal | Self (IP) + Interp + DC | CS |
| MAR 1 9 2024 | RB/JW | Douglas | Al Roubaia i (new cnsl) | GO |
| APR 15 2024 | TH ME | Bloch | | TO |
| | | | | |
| | | | | |

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
COPIE AUTHENTIQUE CERTIFIÉE
ET CONFORME À L'ORIGINAL
OCT 2 3 2024
CLERK OF THE COURT
ONTARIO COURT OF JUSTICE
GREFFIER DE LA COUR
COUR DE JUSTICE DE L'ONTARIO

At Bail Review dated _____
*À la révision de l'ordonnance de détention, datée du*

☐ Original Order Confirmed
*Ordonnance originale confirmée*

☐ New Order Made
*Nouvelle ordonnance rendue*

☐ Gladue Report Requested
*Rapport Gladue demandé*    Date / *Date*

Information#: 998 23 23108816

ORIGINAL - 27/12/2023 10:43 -    Page 7 of 14

DAGAMSEH - EXT -000062

☐ **Accused notified court under s. 530** _____
*Tribunal avisé par l'accusé en vertu de l'art. 530*

☐ **Interpreter Required** _____
*Interprète requis*

☐ **Designation Filed** _____
*Désignation déposée*

**998 23 23108816**
Information Number / Nº de la dénonciation

| Date / Date | Accused / Accusé | Adjournment Date / Date d'ajournement | Adjournment Details / Détails sur l'ajournement | Designation / Désignation | Counsel As Agent / Avocat mandataire | Fails to Appear / Omet de comparaître | Bench Warrant / Mandat d'arrêt | Discretion / Discrétion | Certificate of Default / Certificat de défaut |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| Date / Date | Clerk / Greffier | Crown / Couronne | For the Accused / Pour l'accusé | Justice's Initials / Initiales du juge |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL COPIE AUTHENTIQUE CERTIFIÉE ET CONFORME À L'ORIGINAL OCT 2 3 2024 CLERK OF THE COURT ONTARIO COURT OF JUSTICE GREFFIER DE LA COUR COUR DE JUSTICE DE L'ONTARIO | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**At Bail Review dated** _____
*À la révision de l'ordonnance de détention, datée du*

☐ **Original Order Confirmed**
*Ordonnance originale confirmée*

☐ **New Order Made**
*Nouvelle ordonnance rendue*

☐ **Gladue Report Requested**
*Rapport Gladue demandé*   Date / Date

Information#: 998 23 23108816

ORIGINAL - 27/12/2023 10:43 -    Page 8 of 14

Rex v. / Le Roi c.    Ahmad DAGAMSEH    FEB 2 0 2024    DAGAMSEH - EXT -000063

Information No. / Nº de la dénonciation    998 23 23108816

| Date / Date | Crown Elects to Proceed: / La Couronne choisit de procéder par : | ☐ Summarily Procédure sommaire | ☒ By Indictment Acte d'accusation | ☐ Summary Conviction Offence(s) Infraction(s) punissable(s) sur déclaration de culpabilité par procédure sommaire | ☐ Indictable Offence(s) Acte(s) criminel(s) |
|---|---|---|---|---|---|

| | | Elects Trial by / Choix d'un procès devant | | | | Preliminary Hearing Requested Enquête préliminaire demandée | | Justice's Initials Initiales du juge | Abs. Juris. Comp. absolue | Pleads / Plaide | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Superior Court Cour supérieure | | Ontario Court/ Cour de l'Ontario | | | | | | Guilty to Counts Coupable des chefs d'accusation | Not Guilty to Counts Non coupable des chefs d'accusation |
| Date / Date | Accused / Accusé | Judge Juge | Judge & Jury Juge et jury | Judge On Counts Juge pour les chefs d'accusation | | Yes / Oui | No /Non | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

| Date / Date | Accused / Accusé | Committed (or) Ordered to Stand Trial *On Counts Renvoyé à procès *pour les chefs d'accusation | Discharged on Counts Libéré des chefs d'accusation | Found / Reconnu | |
|---|---|---|---|---|---|
| | | | | Guilty on Counts Coupable des chefs d'accusation | Not Guilty on Counts Non coupable des chefs d'accusation |
| | | | | | |
| | | | | | |
| | | | | | |

* ☐ With consent of accused and prosecutor, without taking or recording    ☐ (a) any evidence    (or) / (ou)    ☐ (b) further evidence
Avec le consentement de l'accusé et du poursuivant, sans recueillir ou consigner    a) des preuves    b) des preuves additionnelles

---

Judge / Juge

Count / Chef _____    Sentence date / Date de détermination de la peine _____    ☐ Withdrawn / Accusation retirée
☐ Pre-sentence custody _____ days/months    Time credited: _____ days/months  ☐ concurrent with _____
   Détention sous garde avant prononcé de la peine jours/mois    Crédit octroyé    jours/mois    concurrente avec
☐ Term that would have been imposed before credit granted: _____ days/months/years
   Période d'emprisonnement imposée avant l'octroi de tout crédit    jours/mois/ans
☐ Absolute discharge    ☐ Conditional discharge    ☐ Suspended sentence
   Absolution inconditionnelle    Absolution conditionnelle    Condamnation avec sursis
☐ Imprisoned for _____ days/months/years    ☐ concurrent with    ☐ consecutive to _____
   Emprisonnement pour    jours/mois/ans    concurrent avec    consécutif à
☐ Intermittent sentence for _____ days    ☐ concurrent with    ☐ consecutive to _____
   Peine discontinue    jours    concurrent avec    consécutif à
☐ Conditional sentence for _____ days/months/years    ☐ concurrent with    ☐ consecutive to _____
   Ordonnance de sursis    jours/mois/ans    concurrent avec    consécutif à
☐ Probation _____ months/years    ☐ concurrent with    ☐ consecutive to _____
   Période de probation    mois/ans    concurrent avec    consécutif à
☐ Community service s.732.1(3)(f) / Service communautaire, par.732.1(3)f)    _____ hours / heures
☐ Fine of $ _____    VS $ _____    ☐ Time to pay _____
   Amende de    $ sur. comp    CORRECT COPY OF délai de paiement
☐ Restitution    s. 738 / s. 739    COPIE ORIGINAL SENTIQUE CERTIFIÉE    Time to pay
   Dédommagement    art. 738 / art. 739    Entre CONFORME A L'ORIGINAL    $    délai de paiement
☐ Victim surcharge $ _____    Time to pay _____
   Suramende compensatoire    $    délai de paiement 2024

| | | | | |
|---|---|---|---|---|
| ☐ Dismissed Rejeté | ☐ HTA cautioned Avertissement (Code de la route) | COURT OF THIS COURT ONTARIO COURT OF JUSTICE Interdiction de conduite : | _____ months / Years mois/années | ☐ s.743.21(1) par. 743.21(1) |
| ☐ Acquitted Acquitté | ☐ Weapons prohibition: Interdiction d'armes par. 109(2) | GREFFIERE DE LA COUR COUR DE JUSTICE DE L'ONTARIO _____ years ans | ☐ s. 109(3) (Life) par.109(3) (perpétuité) | ☐ s. 110: _____ years art.110 ans ☐ s. 110 (life) art.110 (perpétuité) |
| ☐ Stayed Sursis | ☐ DNA: ADN | ☐ 5.03 (Primary) 5.03 (primaire) | ☐ 5.04 (Secondary) 5.04 (secondaire) | ☐ Denied (DND) Rejetée |
| ☐ In Absentia In absentia | ☐ S.O.I.R.A. order: Ordonnance LERDS | ☐ 10 years 10 ans | ☐ 20 years 20 ans | ☐ Life Perpétuité |
| ☐ Other Autre | ☐ s. 161 prohibition: Interdiction, art. 161 | _____ months/years mois/ans | ☐ s. 490 forfeiture order: Ordonnance de confiscation, art. 490 | ☐ Granted Accordée ☐ Denied Rejetée |

_____    _____
Justice of the Peace / Juge de paix    Judge / Juge

DAGAMSEH - EXT -000064

Rexv. / La Roi c.    Ahmad DAGAMSEH    Information No. / Nº de la dénonciation   998 23 23108816

| Count / Chef | Sentence date / Date de détermination de la peine _____ | | ☐ Withdrawn / Accusation retirée |
|---|---|---|---|

☐ Pre-sentence custody _____ days/months    Time credited: _____ days/months    ☐ concurrent with
   *Détention sous garde avant prononcé de la peine  jours/mois*    *Crédit octroyé  jours/mois    concurrente avec*
☐ Term that would have been imposed before credit granted: _____ days/months/years
   *Période d'emprisonnement imposée avant l'octroi de tout crédit    jours/mois/ans*

☐ Absolute discharge    ☐ Conditional discharge    ☐ Suspended sentence
   *Absolution inconditionnelle*    *Absolution conditionnelle*    *Condamnation avec sursis*
☐ Imprisoned for _____ days/months/years    ☐ concurrent with    ☐ consecutive to _____
   *Emprisonnement pour    jours/mois/ans*    *concurrent avec*    *consécutif à*
☐ Intermittent sentence for _____ days    ☐ concurrent with    ☐ consecutive to _____
   *Peine discontinue    jours*    *concurrent avec*    *consécutif à*
☐ Conditional sentence for _____ days/months/years    ☐ concurrent with    ☐ consecutive to _____
   *Ordonnance de sursis    jours/mois/ans*    *concurrent avec*    *consécutif à*
☐ Probation _____ months/years    ☐ concurrent with    ☐ consecutive to _____
   *Période de probation    mois/ans*    *concurrent avec*    *consécutif à*
☐ Community service s.732.1(3)(f) / *Service communautaire, par.732.1(3)(f)* _____ hours / *heures*
☐ Fine of $ _____ VS $ _____    Time to pay _____
   *Amende de    $  sur. comp.*    *délai de paiement*
☐ Restitution    s. 738 / s. 739    Amount $ _____    Time to pay ·
   *Dédommagement    art. 738 / art. 739    montant    $    délai de paiement*
☐ Victim surcharge $ _____    Time to pay: _____
   *Suramende compensatoire    $    délai de paiement*

| | | |
|---|---|---|
| ☐ Dismissed *Rejeté* | ☐ HTA cautioned *Avertissement (Code de la route)* | ☐ Driving prohibition: _____ months / Years *Interdiction de conduite : mois/années* ☐ s.743.21(1) / *par. 743.21(1)* |
| ☐ Acquitted *Acquitté* | ☐ Weapons prohibition: *Interdiction d'armes* | ☐ s. 109(2): ____ years *par. 109(2)  ans* ☐ s. 109(3) (Life) *par.109(3) (perpétuité)* ☐ s. 110: ____ years ☐ s. 110 (life) *art 110  ans  art .110 (perpétuité)* |
| ☐ Stayed *Sursis* | ☐ DNA: *ADN* | ☐ 5.03 (Primary) *5.03 (primaire)* ☐ 5.04 (Secondary) *5.04 (secondaire)* ☐ Denied (DND) *Rejetée* |
| ☐ In Absentia *In absentia* | ☐ S.O.I.R.A. order: *Ordonnance LERDS* | ☐ 10 years *10 ans* ☐ 20 years *20 ans* ☐ Life *Perpétuité* |
| ☐ Other *Autre* | ☐ s. 161 prohibition: *Interdiction, art. 161* | ☐ months/years *mois/ans* ☐ s. 490 forfeiture order: *Ordonnance de confiscation, art. 490* ☐ Granted *Accordée* ☐ Denied *Rejetée* |

Justice of the Peace / *Juge de paix* _____    Judge / *Juge* _____

| Count / Chef | Sentence date / Date de détermination de la peine _____ | | ☐ Withdrawn / Accusation retirée |
|---|---|---|---|

☐ Pre-sentence custody _____ days/months    Time credited: _____ days/months    ☐ concurrent with
   *Détention sous garde avant prononcé de la peine  jours/mois*    *Crédit octroyé  jours/mois    concurrente avec*
☐ Term that would have been imposed before credit granted: _____ days/months/years
   *Période d'emprisonnement imposée avant l'octroi de tout crédit    jours/mois/ans*

☐ Absolute discharge    ☐ Conditional discharge    ☐ Suspended sentence
   *Absolution inconditionnelle*    *Absolution conditionnelle*    *Condamnation avec sursis*
☐ Imprisoned for _____ days/months/years    ☐ concurrent with    ☐ consecutive to _____
   *Emprisonnement pour    jours/mois/ans*    *concurrent avec*    *consécutive to*
☐ Intermittent sentence for _____ days    ☐ concurrent with    ☐ consecutive to _____
   *Peine discontinue    jours*    *concurrent avec*    *consécutive to*
☐ Conditional sentence for _____ days/months/years    ☐ concurrent with    ☐ consecutive to _____
   *Ordonnance de sursis    jours/mois/ans*    *concurrent avec*    *consécutive to*
☐ Probation _____ months/years    ☐ concurrent with    ☐ consecutive to _____
   *Période de probation    mois/ans*    *concurrent avec*    *consécutif à*
☐ Community service s.732.1(3)(f) / *Service communautaire, par.732.1(3)(f)* _____ hours / *heures*
☐ Fine of $ _____ VS $ _____    Time to pay _____
   *Amende de    $  sur. comp.*    *délai de paiement*
☐ Restitution    s. 738 / s. 739    Amount $ _____    Time to pay ·
   *Dédommagement    art. 738 / art. 739    montant    $    délai de paiement*
☐ Victim surcharge $ _____    Time to pay: _____
   *Suramende compensatoire    $    délai de paiement*

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
COPIE AUTHENTIQUE CERTIFIÉE
CONFORME À L'ORIGINAL

OCT 2 3 2024

CLERK OF THE COURT
ONTARIO COURT OF JUSTICE
GREFFIER DE LA COUR
DE JUSTICE DE L'ONTARIO

| | | |
|---|---|---|
| ☐ Dismissed *Rejeté* | ☐ HTA cautioned *Avertissement (Code de la route)* | ☐ Driving prohibition: _____ months / Years *Interdiction de conduite : mois/années* ☐ s.743.21(1) / *par. 743.21(1)* |
| ☐ Acquitted *Acquitté* | ☐ Weapons prohibition: *Interdiction d'armes* | ☐ s. 109(2): ____ years *par. 109(2)  ans* ☐ s. 109(3) (Life) *par.109(3) (perpétuité)* ☐ s. 110: ____ years ☐ s. 110 (life) *art 110  ans  art .110 (perpétuité)* |
| ☐ Stayed *Sursis* | ☐ DNA: *ADN* | ☐ 5.03 (Primary) *5.03 (primaire)* ☐ 5.04 (Secondary) *5.04 (secondaire)* ☐ Denied (DND) *Rejetée* |
| ☐ In Absentia *In absentia* | ☐ S.O.I.R.A. order: *Ordonnance LERDS* | ☐ 10 years *10 ans* ☐ 20 years *20 ans* ☐ Life *Perpétuité* |
| ☐ Other *Autre* | ☐ s. 161 prohibition: *Interdiction, art. 161* | ☐ months/years *mois/ans* ☐ s. 490 forfeiture order: *Ordonnance de confiscation, art. 490* ☐ Granted *Accordée* ☐ Denied *Rejetée* |

Justice of the Peace / *Juge de paix* _____    Judge / *Juge* _____

Information#: 998 23 23108816    ORIGINAL - 27/12/2023 10:43 -    Page 10 of 14

DAGAMSEH - EXT -000065

**Information No. / N° de la dénonciation**
998 23 23108816

**Return Date / Date à laquelle le document est rapporté**
Tue. Jan 30 ,20 24

**INFORMATION Against / DÉNONCIATION visant**
DAGAMSEH, Ahmad Tayseer

**Address / Adresse**
LONDON, ON

**CHARGE / ACCUSATION**
SEXUAL ASSAULT

Refer to front page for further counts / Reportez-vous à la première page pour plus de chefs

**FOR ADMINISTRATIVE PURPOSES ONLY**
**À DES FINS ADMINISTRATIVES SEULEMENT**

☐ Summons / Sommation   ☐ Show Cause / Audience de justification   ☐ Warrant 1st / Mandat en 1re instance

☐ Replacement Information / Dénonciation de remplacement

☐ Reportable M.V. Offence (H.T.A. 199) / Infraction V.M. à déclarer (Code de la route 199)   ☐ C.V.O.R. No (Commercial Vehicles Only) / Numéro C.I.U.V.U. (véhicules utilitaires seulement)

| Sex / Sexe | Birth Date / Date de naissance | | | Was defendant owner? / La partie défenderesse était-elle propriétaire? | Involves a Collision / Infraction reliée à un accident |
|---|---|---|---|---|---|
| | Day / Jour | Month / Mois | Year / Année | ☐ Yes/Oui ☐ No/Non | |
| M | | | | | |

**Driver's Licence Number / Numéro du permis de conduire**

**Plate No. / Numéro de plaque**

**Informant / Dénonciateur**
Bernard Scheid

**Deemed Sworn / Affirmed Date / Réputée être déclarée sous serment/affirmée solennellement le**
DEC 24th, 23

**Date of Arrest / Date de l'arrestation**
Dec. 21, 2023

**Officer / Agent de police**
LIISCOMBE, TIMOT

**No. / N°**
314684

**Div. / Dist.**

**Police Agency / Service de police**
LONDON POLICE SERVICE

**Occurrence Number / N° d'incident**
23-110213

**Courtroom / Salle d'audience**
4

**At / À(au)**
ONTARIO COURT OF JUSTICE
80 DUNDAS STREET, LONDON, ONT.

Information No. 998 23 23108816

CERTIFIED CORRECT COPY / COPIE AUTHENTIQUE ET CONFORME À L'ORIGINAL

OCT 23 2024

CLERK OF THE COURT
ONTARIO COURT OF JUSTICE
GREFFIER DE LA COUR
COUR DE JUSTICE

ORIGINAL - 27/12/2023 10:43 - Page 11 of 14

This document has been digitally signed / Ce document a été signé numériquement.

DAGAMSEH - EXT -000066

Information#: 998 23 23108816

Accused Summary :

| Accused Name | DOB | Count # | Offence Date(s) | Offence | Section | Statute | Arrest Date |
|---|---|---|---|---|---|---|---|
| DAGAMSEH, Ahmad (1) | ▆▆ | 1 | Nov 20, 2023 | SEXUAL ASSAULT | s.271 | CC | 211223 |

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
COPIE AUTHENTIQUE CERTIFIÉE
ET CONFORME À L'ORIGINAL

OCT 2 3 2024

CLERK OF THE COURT
ONTARIO COURT OF JUSTICE
GREFFIER DE LA COUR
COUR DE JUSTICE DE L'ONTARIO

Arrest Date: <u>211223</u>        15 month Flag:    <u>220325</u>        18 month Flag:    <u>210625</u>
*Date d'arrestation*                *Alerte à 15 mois (ddmmyy / jjmmaa) Alerte à 18 mois (ddmmyy / jjmmaa)*
Sworn Date: <u>241223</u>        15 month Flag:    <u>250325</u>        18 month Flag:    <u>240625</u>
*Date d'assermentation*            *Alerte à 15 mois (ddmmyy / jjmmaa) Alerte à 18 mois (ddmmyy / jjmmaa)*

DAGAMSEH - EXT -000067

THIS IS EXHIBIT **"B"** TO THE AFFIDAVIT OF

AMANDA RUBASZEK SWORN BEFORE ME

THIS 7ᵗʰ DAY OF JANUARY, 2025

David Friesen Crown Counsel
Barrister and Solicitor and
Commissioner of Oaths
LSO # 52835 I

**WARRANT FOR ARREST (BENCH WARRANT)**
*MANDAT D'ARRESTATION (DECERNE PAR UN JUGE)*

CANADA
PROVINCE OF ONTARIO
*PROVINCE DE L'ONTARIO*

West / Ouest
(Region / *Région*)

Modified Form / *Formule modifiée* 7
Sections / *Articles* 475, 493, 597, 800, and / *et* 803
of the *Criminal Code* / *du Code criminel*
LPS 2311-998-23-23108816-00
Case/File No. / *N° du cas/dossier*

To the peace officers in the Region and in the Province of Ontario:
*Aux agents de la paix dans ladite région et dans la province de l'Ontario:*

This warrant is issued for the arrest of  Ahmad Tayseer DAGAMSEH
*Le présent mandat est délivré pour l'arrestation de*                (name / *nom*)                (date of birth / *date de naissance*)

of the  City  of  London
*du (de la)*  de

in the  Province  Of  Ontario  , referred to in this warrant as the accused,
*dans le (la)*  de  *ci-après appelé(e) le prévenu.*

BECAUSE the accused has been charged with, on or about the  20TH  day of  NOVEMBER , 20  23
*ATTENDU QUE le prévenu a été inculpé d'avoir, le ou vers le*  *jour de*

at the  City  of  London  , in the said Region,
*à (au)*  de  *dans ladite région,*

(set out briefly the offence in respect of which the accused is charged / *énoncer brièvement l'infraction dont le prévenu est inculpé*)

CCC s. 271 - SEXUAL ASSAULT

AND BECAUSE (check those that are applicable):
*ET ATTENDU QUE (cocher uniquement ce qui s'applique) :*

☑ (a) there are reasonable grounds to believe that it is necessary in the public interest to issue this warrant for the arrest of the accused (507(4), 512(1));
*qu'il y a des motifs raisonnables de croire qu'il est nécessaire dans l'intérêt public de délivrer le présent mandat pour l'arrestation du prévenu (507(4), 512(1));*

☐ (b) the accused failed to attend court in accordance with the summons served on the accused (512(2));
*que le prévenu a omis d'être présent au tribunal en conformité avec la sommation qui lui a été signifiée (512(2));*

☐ (c) (an appearance notice or undertaking) was confirmed and the accused failed to attend court in accordance with it (512(2));
*qu'une (citation à comparaître ou promesse) a été confirmée et que le prévenu a omis d'être présent au tribunal en conformité avec ce document (512(2));*

☐ (d) it appears that a summons cannot be served because the accused is evading service (512(2));
*qu'il paraît qu'une sommation ne peut être signifiée du fait que le prévenu se soustrait à la signification (512(2));*

☐ (e) the accused was ordered to be present at the hearing of an application for a review of an order made by a justice and did not attend the hearing (520(5), 521(5));
*qu'il a été ordonné au prévenu d'être présent à l'audition d'une demande de révision d'une ordonnance rendue par un juge de paix et que le prévenu n'était pas présent à l'audition (520(5), 521(5));*

☐ (f) there are reasonable grounds to believe that the accused has contravened or is about to contravene the (summons or appearance notice or undertaking or release order) on which the accused was released (512.3);
*qu'il y a des motifs raisonnables de croire que le prévenu a violé ou est sur le point de violer une (sommation ou citation à comparaître ou promesse ou ordonnance de mise en liberté) aux termes de laquelle il a été mis en liberté (512.3);*

☐ (g) there are reasonable grounds to believe that the accused has committed an indictable offence since their release from custody on (summons or appearance notice or undertaking or release order) (512.3);
*qu'il y a des motifs raisonnables de croire que, depuis sa mise en liberté aux termes d'une (sommation ou citation à comparaître ou promesse ou ordonnance de mise en liberté), le prévenu a commis un acte criminel (512.3);*

☐ (h) the accused was required by (appearance notice or undertaking or summons) to attend at a time and place stated in it for the purposes of the *Identification of Criminals Act* and did not appear at that time and place (512.1, 512.2);
*que le prévenu était tenu par (citation à comparaître ou promesse ou sommation) exigeait que le prévenu soit présent aux date, heure et lieu indiqués pour l'application de la Loi sur l'identification des criminels et que le prévenu n'a pas comparu aux date, heure et lieu ainsi indiqués (512.1, 512.2);*

☐ (i) an indictment has been found against the accused and the accused has not appeared or remained in attendance before the court for their trial (597);
*qu'une mise en accusation a été prononcée contre le prévenu et que le prévenu n'a pas comparu ou n'est pas demeuré présent devant le tribunal pour son procès (597);*

☐ (j) (if none of the above applies, reproduce the provisions of the statute that authorize this warrant).
*(Pour tout cas qui n'est pas visé ci-dessus, reproduire les dispositions de la loi qui autorisent le mandat.)*

THEREFORE, you are ordered, in His Majesty's name, to immediately arrest the accused and to bring them before
*EN CONSÉQUENCE, il vous est enjoint par les présentes, au nom de Sa Majesté, d'arrêter immédiatement le prévenu et de l'amener devant*

the Ontario Court of Justice  , to be dealt with according to law.
(state court, judge or justice / *indiquer le tribunal, le juge ou le juge de paix*)  *, pour qu'il soit traité selon la loi*

Signed on this  15TH  day of  APRIL , 20  24
*Signé le*  *jour de*

at the  City
*à (au )*

of  London
*de*

in the Province of Ontario / *dans la province de l'Ontario*

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
COPIE AUTHENTIQUE CERTIFIÉE
ET CONFORME À L'ORIGINAL

OCT 2 3 2024

CLERK OF THE COURT
ONTARIO COURT OF JUSTICE
GREFFIER DE LA COUR
COUR DE JUSTICE DE L'ONTARIO

(Signature of judge, provincial court judge, justice or clerk of the court /
*Signature du juge, du juge de la cour provinciale, du juge de paix ou
du greffier du tribunal*)

JUSTICE OF THE PEACE T. OUDEKERK

(Name of the judge, provincial court judge or justice
who has issued this warrant / *Nom du juge, du juge de la cour
provinciale ou du juge de paix ayant décerné le mandat*)

NOTE:   If the Optional Authorization to Enter a Dwelling-House in Form 7 needs to be added, use the Warrant for Arrest with Optional Authorization to Enter a Dwelling-House (Form 7).

NOTA :   *Si le mandat d'arrestation avec autorisation facultative d'entrer dans une maison d'habitation (formule 7) doit être ajouté, il faut utiliser le mandat d'arrestation avec autorisation facultative d'entrer dans une maison d'habitation (formule 7).*

CO-7-476-B (rev. 12/19) CSD

DAGAMSEH - EXT -000069

Form / Formule 28
Section / Article 528
of the Criminal Code / du Code criminel

ENDORSEMENT OF WARRANT
*VISA DU MANDAT*

CANADA,
PROVINCE OF ONTARIO
*PROVINCE DE L'ONTARIO*

_____
(Region / Région)

In accordance with the application this day made to me, I authorize the arrest of the accused (or defendant)

*Conformément à la demande qui m'a été adressée ce jour, j'autorise par les présentes l'arrestation du prévenu (ou du défendeur)*

within the _____
*dans la* _____
(Region / Région)

Dated this _____ day of _____ , 20 ___
*Fait le _____ jour de*

at the _____
*à (au)* of
de

in the Province of Ontario / *dans la province de l'Ontario*

_____
Signature of Justice / *Signature du juge de paix*

---

Form / Formule 29
Section / Article 493 and et
subsection / paragraphe 507(6)
of the Criminal Code / du Code criminel

ENDORSEMENT OF WARRANT
*VISA DU MANDAT*

CANADA,
PROVINCE OF ONTARIO
*PROVINCE DE L'ONTARIO*

_____
(Region / Région)

Whereas this warrant is issued in respect of an offence other than an offence mentioned in section 522 of the Criminal Code, I hereby authorize the release of the accused pursuant to section 499 thereof.

*Attendu que le présent mandat est décerné relativement à une infraction autre qu'une infraction mentionnée à l'article 522 du Code criminel, j'autorise par les présentes la mise en liberté du prévenu conformément à l'article 499 mentionné ci-dessus.*

Dated this _____ day of _____ , 20 ___
*Fait le _____ jour de*

at the _____
*à (au)* of
de

in the Province of Ontario / *dans la province de l'Ontario*

_____
Signature of Judge or Justice of the Peace / *Signature du juge ou juge de paix*

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
COPIE AUTHENTIQUE CERTIFIÉE
ET CONFORME À L'ORIGINAL

OCT 2 3 2024

CLERK OF THE COURT
ONTARIO COURT OF JUSTICE
GREFFIER DE LA COUR
COUR DE JUSTICE DE L'ONTARIO

DAGAMSEH - EXT -000070

HIS MAJESTY THE KING

v.

AHMAD TAYSEER DAGAMSEH

IN THE MATTER of a request by Canada for the extradition of AHMAD TAYSEER DAGAMSEH from the United States of America with respect to offences under the *Criminal Code* of Canada.

AFFIDAVIT OF LAW

MINISTRY OF THE ATTORNEY GENERAL
FOR THE PROVINCE OF ONTARIO
Crown Law Office - Criminal
720 Bay Street, 10th Floor
TORONTO, Ontario
M7A 2S9

DAGAMSEH - EXT -000071

| | | |
|---|---|---|
| CANADA | ) | HIS MAJESTY THE KING |
| | ) | |
| PROVINCE OF ONTARIO | ) | v. |
| | ) | |
| TORONTO REGION | ) | AHMAD TAYSEER DAGAMSEH |

IN THE MATTER of a request by Canada for the extradition of Ahmad Tayseer DAGAMSEH from the United States of America with respect to offences under the *Criminal Code* of Canada.

## AFFIDAVIT OF FACT

I, **Ardiana Berisha**, of the City of London, in the Province of Ontario, Canada, **MAKE OATH AND SAY AS FOLLOWS:**

## A.    INTRODUCTION

1.      I am a police officer with the London Police Service ("LPS") and have been a police officer with the Service since July 2017. I am one of the primary investigating officers in respect of this matter. I am currently assigned to the Sexual Assault and Child Abuse Unit within the Criminal Investigation Division. My normal duties include investigating sexual assault as well as child and elder abuse.

2.      I have been a police officer for seven years where I primarily worked in Patrol within the Uniform Division. I have been assigned to the Sexual Assault and Child Abuse Unit as of April 2023. I am one of the investigating officers in this matter.

3.      I became involved in this investigation on October 21st, 2024, and continue to be involved to date. As one of the lead investigators, I am very familiar with this case and have personal knowledge of the matters referred to herein. I have personal knowledge except where I have indicated that my knowledge is based on information and belief, in which case I now confirm that I believe such information to be true.

1

## B.    THE CHARGES

4.    Canada is seeking the extradition of Ahmad Tayseer DAGAMSEH in relation to one count of sexual assault, contrary to section 271 of the *Criminal Code* of Canada. This offence is believed to have been committed on November 20, 2023, in the City of London, Ontario, Canada.

5.    The charge was laid by the swearing of an Information sworn by police Constable Bernard Scheid before the Honorable Justice Abdul CHARBAR of the Ontario Court of Justice, London, Ontario on December 24, 2023. On April 15, 2024, a Bench Warrant for the Arrest of Ahmad Tayseer DAGAMSEH was issued by the Honorable Justice Tara OUDEKERK of the Ontario Superior Court of Justice, London, Ontario. The arrest warrant is presently outstanding in respect of the charge contained in the aforementioned Information.

## C.    SUMMARY OF ALLEGED OFFENCE

6.    To protect her identity and privacy, the victim will be referred to by her initials "████". ████ was born on ████████████.

7.    ████ provided a videotaped statement to LPS on December 1, 2023. As described below, she stated she was sexually assaulted by Ahmad Tayseer DAGAMSEH on one occasion at White Oaks Mall in the City of the London located at 1105 Wellington Rd.

8.    ████ met the accused in October 2023 while shopping at White Oaks Mall with a friend. ████ and DAGAMSEH exchanged snapchat accounts and began communicating. The victim disclosed to her mother that she was communicating with DAGAMSEH as it was traditional practice within their Muslim religion to enter a courtship.

9.    ████ and DAGAMSEH met approximately ten times with her family present for each interaction. During these interactions and communications over text, the victim became concerned that DAGAMSEH wanted to get married as soon as possible because she is a Canadian citizen. DAGAMSEH repeatedly discussed how a marriage would secure him in becoming a Canadian citizen. DAGAMSEH was born in Jordan.

10.    The victim decided to end the relationship as her grandmother who resides in Jordan warned her that DAGAMSEH had a criminal record from Jordan.

11.    On November 20, 2023, the victim was working as a retail cashier at Fairweather, a clothing store, located inside of White Oaks Mall. DAGAMSEH and the victim met outside the

store at 1:30pm and agreed to go for a walk outside the mall as there were too many people around. They entered the parking garage towards the middle stairwell. They proceeded to walk to the second last level and sat on top of the landing.

12.     While sitting on the stair, DAGAMSEH begged the victim to become his wife. He leaned over and kissed her on the lips. The victim pushed him away and told her no. The victim looked at her phone and explained she had to get back to work. He then took her phone. DAGAMSEH leaned in again and kissed her on the lips in an aggressive manner. The victim told him that she had to get back to work. DAGAMSEH then pushed her backwards causing her to lay on her back. In the process, the back of her head hit the concrete stairs. DAGAMSEH positioned himself on top of the victim. The victim responded by repeatedly telling him to get off her and to stop touching her.

13.     ▆▆▆▆ could feel DAGAMSEH's erect penis as he was rubbing it over her vaginal area over her clothes. The victim began crying and screaming at which point he put his hand on her mouth and told her to be quiet. The victim was trying to push him away and she put her hand against his throat and was hitting him, which caused him to become aggressive and hit the victim. The victim was eventually able to remove herself from underneath DAGAMSEH by wiggling herself out from underneath him. She picked up her phone and started running away. DAGAMSEH followed her and was apologizing and asking her to forgive him.

14.     The victim immediately returned to work and disclosed to her mother in person that she was sexually assaulted. The victim's mother was also working at the time as an employee at Fairweather. The victim's mother immediately contacted LPS.

15.     DAGAMSEH was arrested on December 21, 2023, and charged with one count of sexual assault on December 24, 2023. DAGAMSEH was arrested at 1401 Ernest Avenue in the City of London. He was detained in custody but released on an Undertaking on January 15, 2024. He made several court appearances between January 2024 and March 2024, but then failed to attend court on April 15, 2024. A Bench Warrant for his arrest was issued and his whereabouts were unknown until London Police Service learned from Homeland Security in July 2024 that DAGAMSEH was in the United States. At that time, he was believed to be in New York City. I subsequently learned from Detective Liscombe a member of the LPS Sexual Assault and Child

DAGAMSEH - EXT -000074

Abuse Unit that DAGAMSEH was detained on immigration issues and is presently at the Buffalo Federal Detention Facility in Batavia, New York USA.

**D.    IDENTIFICATION OF THE ACCUSED**

16.    The accused in this matter is Ahmad Tayseer DAGAMSEH born on ███████████ in Jordan. He is not a Canadian citizen, and he does not have a criminal record in Canada.

17.    Attached hereto and marked as **Exhibit "A"** to this affidavit is a photograph of DAGAMSEH. This photograph was taken by London Police Service when DAGAMSEH was arrested and booked at the London Police Services Headquarters Detention Center in connection with these allegations, on December 21, 2023. On October 25, 2024, the victim attended London Police Headquarters where she was shown the photo attached as **Exhibit "A".** The victim confirmed that this is the person she knows to be Ahmad Tayseer DAGAMSEH and is the person whom she alleges sexually assaulted her.

18.    ████ had earlier provided police in her statement, with the name of the accused, his date of birth, and a Facebook photo of Ahmad Tayseer DAGAMSEH, a copy of which is attached as **Exhibit "B"**.

19.    Attached hereto and marked as **Exhibit "C"** is a true copy of the fingerprints taken by Police Cadet Nicholas MURPHY #455924 when DAGAMSEH was arrested on December 21, 2023, by the London Police Service.

**E.    CURRENT LOCATION**

20.    On October 16, 2024, Detective Liscombe was advised by Brendan O'Connor an Immigration and Customs Enforcement officer with the U.S Department of Homeland Security that DAGAMSEH was apprehended for being illegally within the United States and has a court date scheduled for his immigration hearing on January 15th, 2025 at 8:30am. DAGAMSEH is currently being held in custody at 4250 Federal Drive Buffalo Federal Detention Facility in Batavia, New York USA.

**F.    CONCLUSION**

21.    Based on the foregoing, I have reasonable and probable grounds to believe, and I do believe, that DAGAMSEH committed the offence described in this affidavit.

4

DAGAMSEH - EXT -000075

22.      I make this affidavit in support of Canada's request for the extradition of DAGAMSEH so that he may be tried for the offence with which he has been charged and for no improper purpose or motive.


**SWORN BEFORE ME** at the                    )
City of London, in the Province of            )
Ontario, Canada, this _2nd_ day               )
of January, 2025.                             )

_____
Ardiana Berisha

Trina Andrea McGahey,
a Commissioner, etc., Province of
Ontario, for London Police Service.
Expires October 11, 2027.

_____
Commissioner of Oaths

5

DAGAMSEH - EXT -000076

THIS IS **EXHIBIT A** to the AFFIDAVIT OF
ARDIANA BERISHA SWORN BEFORE ME
THIS 2ⁿᵈ DATE OF _January_, 2025.

A COMMISSIONER, ETC

Trina Andrea McGahey,
a Commissioner, etc., Province of
Ontario, for London Police Service.
Expires October 11, 2027.

6

DAGAMSEH - EXT -000077

# LONDON POLICE, ON30240
## BOOKING DATA SHEET

Printed On: 2024/02/01
Printed By: 454924-SHERGHA, ARDANA
Total Page(s): 2



### MASTER INFORMATION
Master Name: DAGAMSEH, AHMAD TAYSEER HUSSEIN

Master DOB: ██████
FPS Number: 934219G
Criminal Record ID: 231679

AID/Photo #: 231679
KO #: 867926

### BOOKING INFORMATION
Booking Name: DAGAMSEH
Given 1: AHMAD
Given 2: TAYSEER
Given 3: HUSSEIN
Given 4:
In Custody: No
Booking Date: 2024/02/01
Arrest Date: 2023/12/21
FP Taken By: 455924-MURPHY, NICHOLAS

YP: No
SID: ██████
Date of Birth: ██████

### ADDRESS INFORMATION
Address: ██████
City: LONDON
Province/State: ONTARIO
Country: CANADA

Code/ZIP: ██████
Phone: ██████

### PHYSICAL CHARACTERISTICS
Sex: MALE
Race: NON-WHITE
Race Description: ARAB
RMS Race: ARAB
Weight: 79 kg
Height: 178 cm
Hair Colour 1: BROWN
Hair Colour 2: BLACK
Hair Colour 3:
Hair Type 1: STRAIGHT
Hair Type 2: CURLY
Hair Type 3:
Hair Length: SHORT

Eye Colour 1: BROWN
Eye Colour 2:
Eye Defect:
Facial Hair Colour: BLACK
Facial Hair 1: MOUSTACHE
Facial Hair 2: GOATEE
Complexion: MEDIUM
Speech:
Marital Status:
Teeth:
Ears:
Blood Type:
DNA: No
Build: MEDIUM

### OTHER CHARACTERISTICS:

### IMMIGRATION INFORMATION
Date Of Entry: 2023/10/01
Identifier:
Port Of Entry: TORONTO

Country Of Birth: JORDAN
City Of Birth: SHEMALL

### CHARGES

| No. | Offence | Statute | Section Number | Description |
|-----|---------|---------|----------------|-------------|
| 001 | 2023/11/20 | CRIMINAL CODE (CC) | 271 | SEXUAL ASSAULT SEC 271 CC |

7

DAGAMSEH - EXT -000078

THIS IS **EXHIBIT B** to the AFFIDAVIT OF
ARDIANA BERISHA SWORN BEFORE ME
THIS 2ᴺᴰ DATE OF _January_ , 2025.

A COMMISSIONER, ETC

Trina Andrea McGahey,
a Commissioner, etc., Province of
Ontario, for London Police Service.
Expires October 11, 2027.

8

DAGAMSEH - EXT -000079



DAGAMSEH - EXT -000080

THIS IS **EXHIBIT C** to the AFFIDAVIT OF
ARDIANA BERISHA SWORN BEFORE ME
THIS _2nd_ DATE OF ___January___, 2025.

_____
A COMMISSIONER, ETC

Trina Andrea McGahey,
a Commissioner, etc., Province of
Ontario, for London Police Service.
Expires October 11, 2027.

DAGAMSEH - EXT -000081

Royal Canadian   Gendarmerie royale
Mounted Police   du Canada

**Criminal Fingerprint Identification**
**Identification dactyloscopique criminelle**

| Apposé - Affixé | Certified - Certifié par | Verified - Vérifié |
|---|---|---|



| FBI/BID ORI / Name / Address of Contributing Agency *<br>IAB / nom / adresse du service contributeur *<br>**ORI0280**<br>LONDON POLICE, CANADA<br>601 DUNDAS ST<br>LONDON, ONTARIO<br>CANADA, N6A 1H1 | Contributors No./Reference No<br>N° du contributeur<br>N° ca référence<br>**267924** | Name of official taking fingerprints *<br>Nom du préposé aux empreintes *<br>455324-MURPHY, NICHOLAS | Date fingerprinted (YYYY-MM-DD) *<br>Date de prélèvement des<br>empreintes (AAAA-MM-JJ) *<br>2024-02-01 | |
|---|---|---|---|---|
| Surname - Nom de famille *<br>DAGAMSEH | Given Names - Prénoms *<br>AHMAD TAYEEER HUSSEIN | | | |
| Other names - aliases, nicknames, maiden name<br>Autres noms - noms d'emprunt, surnoms, nom de jeune fille<br>AHMED, DAGAMSEH | Place of birth (city, province & country) *<br>Lieu de naissance (ville, province et pays)<br>IRBID, JORDAN | Date of birth (YYYY-MM-DD) *<br>Date de naissance (AAAA-MM-JJ) *<br> | Young Person<br>Adolescent | |
| Apartment / Unit #, Street address *  - No d'app /d'unité, adresse municipale *<br>CANADA | City - Ville *<br>LONDON | Province<br>ONTARIO | FPS NO - N° SED | |
| Gender - Sexe *<br>[X] Male<br>Homme   [ ] Female<br>Femme | Height - Taille (cm)<br>178 | Weight - Poids (kg)<br>75 | Eyes - Yeux<br>BROWN | Hair-Cheveux<br>BROWN<br>934229G |
| Race<br>[ ] White<br>Blanche  [X] Other<br>Autre | Caution - Mise en garde<br>[ ] Violent   [ ] Suicidal<br>Suicidaire   [ ] Escape risk<br>Risque d'évasion | | | Photo - |



Peculiarities, marks, scars, tattoos, deformities, etc. - Traits caractéristiques, marques, cicatrices, tatouages, difformités, etc.

| Offence information - Renseignements sur l'infraction<br>[ ] Sex related infraction sexuelle  [ ] Sexual assault Voies de fait  [ ] Date sex-offence Agression sexuelle sur enfant  [ ] Other family violence Autre type de violence familiale | Information has been sworn *<br>La dénonciation a été faite sous serment *<br>[ ] | Date arrested (YYYY-MM-DD) *<br>Arrété le (AAAA-MM-JJ) *<br>2023-11-21 | |
|---|---|---|---|
| | Victim - Victime<br>[ ] M  [ ] F  Age | | | |
| Date and Place of Sentence<br>Date et lieu de la sentence | Date of Offence<br>Date de l'infraction<br>YYYY-MM-DD<br>AAAA-MM-JJ<br>2023-11-20 | Charge - Exact Section - Statute<br>Accusation - Article exact - Loi<br>SEXUAL ASSAULT SEC 271 CC<br>COUNTS-COMTES: 3 CHG #: 2023 115313 | Disposition<br>Décision |
| Investigating Agency - Organisme d'enquête *<br>LONDON POLICE SERVICE | | | |

\* Mandatory    \* Charges must be sworn before fingerprints are submitted
\* Obligatoire   \* Le dépôt d'accusations doit précéder la transmission de dactylogrammes

RCMP GRC C-216 (2015-05)    Page 1 slide 4

Canada

1 2 5 3 5 8 3 6 3 2 1 0 4 6 5 7 1 0 2

DAGAMSEH - EXT -000082

HIS MAJESTY THE KING

v.

AHMAD TAYSEER DAGAMSEH

IN THE MATTER of a request by Canada for the extradition of AHMAD TAYSEER DAGAMSEH from the United States of America with respect to offences under the *Criminal Code* of Canada.

AFFIDAVIT OF FACT